## WILLIAMS *v.* DAWIDOWICZ ET AL.

[No. 86, October Term, 1955.]

78

80

*Decided February 13, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Julius G. Maurer* and *W. Hamilton Whiteford,* with whom was *Wendell D. Allen* on the brief, for appellant.

*George L. Clarke,* with whom were *Everett L. Buck-master, George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee, Henry J. Dawidowicz.

*G. C. A. Anderson,* for appellee, Elmo L. Aiudi.

HENDERSON, J., delivered the opinion of the Court.

This case arose out of a head-on collision between two automobiles on Route 301 in Prince George's County on December 22, 1950. The plaintiff, Dawidowicz, who was at that time in the army, was a passenger in an automobile driven in a northerly direction by Elmo L. Aiudi, another soldier, which collided in the northbound lane with an automobile driven in a southerly direction by the appellant, Williams. Among other injuries, Dawidowicz sustained a severe cut on his left wrist, which required seven stitches. On May 22, 1953, the plaintiff filed suit against both drivers and after a trial, in June, 1955, the jury returned a verdict of $35,000 against Williams, and a verdict in favor of Aiudi, upon which judgments were duly entered.

The first question raised is on a motion by Aiudi to dismiss the appeal as against him. The appellant, Williams, entered an appeal in these words: "Mr. Clerk: Please enter an appeal to the Court of Appeals of Maryland on behalf of Defendant D. Earl Williams in the above entitled case." There was no cross-appeal by Dawidowicz from the judgment in favor of Aiudi, and it is contended that, in the absence of express designation, the only judgment appealed from is that against Williams.

It seems clear that Williams would have had a right to appeal not only from the judgment against him, but

from the judgment in favor of the co-defendant, in view of his right to contribution if the co-defendant was also guilty of negligence contributing to the injury. *Koester Bakery Co. v. Poller, etc.,* 187 Md. 324, 326. See also *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, and *E. Coast Lines v. M. & C. C. of Balto.,* 190 Md. 256. The only question here is whether the order of appeal was sufficiently definite to include both judgments.

We have found no authority directly in point. *Poe, Practice* (Tiffany's ed.) § 823, notes that a mere direction to enter an appeal is sufficient to bring up for review a judgment against the appellant. The Federal Rule 73(b), which requires that the notice of appeal "designate the judgment or part thereof appealed from", has no counterpart in our rules. In the absence of any such requirement, we think the filing of an appeal in general terms is sufficient to bring up for review all judgments from which the appellant has standing to appeal. Cf. *Baitary v. Smith,* 140 Md. 437, 440. The motion to dismiss the appeal is denied.

The appellant contends that there was no legally sufficient evidence of negligence on his part, and that his motion for directed verdict should have been granted. There is no dispute that the accident occurred at about 4:30 P. M. on December 22, 1950, that it was daylight, and there was nothing to obstruct the vision of either driver, as the road was straight at that point for a distance of about a mile. According to the witnesses for the plaintiff, Williams pulled out of a line of traffic in an effort to pass other cars travelling south. The road had only one lane for traffic in each direction, with a marked center line. Aiudi was driving at a speed of about forty to forty-five miles per hour, when he saw Williams pull out in the northbound lane at a distance which he estimated at about two hundred yards. Dawidowicz testified that Williams' car was four or five hundred yards away when he pulled out, but Aiudi applied the brakes "almost instantly" and was almost at a standstill when the collision occurred. At the point of collision there was

a soft dirt shoulder about three feet wide and a ditch to his right. The left side of the road was blocked by approaching traffic. The road was wet, but there was no ice on it.

Williams' version of the accident was that he was proceeding at a rate of twenty-five to thirty miles per hour, with several cars behind him and one car ahead. He speeded up to pass this car, and did so. There was nothing in sight. When he had passed the car ahead by about one hundred feet, he struck a patch of ice, the first he had encountered that day, and skidded straight ahead for about one hundred feet. His car stopped, and he was at a standstill for about half a minute when the Aiudi car bore down on him, without making an effort to stop or swerve. Williams testified that the shoulder of the road was about eight feet wide, with a slight decline toward an open field.

The trial court submitted the case to the jury under adequate instructions upon the issue of negligence as to each, or both, of the defendants to which no objections were made. The case clearly presented factual issues which were resolved by the jury, and we find no error in the refusal to grant a directed verdict as to Williams. The appellant contends that the court erred in refusing to instruct the jury that if they believed that Williams was confronted with an emergency, and that the collision could have been avoided by Aiudi, had Aiudi stopped or swerved his automobile to the right or left, it was their duty to find a verdict in favor of Williams.

We find no error in the refusal to make this charge. The court did instruct the jury that it was Aiudi's duty to do everything that a reasonable person could have done under the circumstances to avoid the accident. Moreover, there was no evidence to support the theory of an emergency, so far as Williams was concerned. In his testimony, that no car was in sight when he pulled out, he was not faced with an emergency. The only emergency was the one created by Williams, which put Aiudi to a choice of stopping or pulling to the right or

left.  Cf. *Dwyer v. Chew,* 149 Md. 281, 284, *Newman v. Stocker,* 161 Md. 552, 555, and *Baker v. Shettle,* 194 Md. 666, 671.

The chief point pressed on this appeal is that the court erred in permitting the witness, Sappington, to answer a hypothetical question.  Dr. Nevulis, whose deposition was read to the jury, had testified that at the time of his examination of Dawidowicz in February, 1955, he had a limitation in the motion of his left wrist of about fifty per cent in all directions, and complained of pain.  X-rays were taken, and subsequently an operation was performed to excise scar tissue and remove glass and bone fragments from the wrist.  He stated that the patient had at the time of the deposition about twenty per cent permanent disability of the wrist, with limitation of motion, which might become progressively worse, because of the cystic degeneration of the semilunar bone, due to the initial trauma.  The patient was still under treatment at the time, and complained of pain in the wrist.  The bone had never healed, and probably would not heal.  The condition was known in medical terminology as aseptic necrosis, or Kienbock's disease.  His diagnosis was supported by Dr. Jones, but Dr. Horine, called by Williams, denied that the patient had Kienbock's disease, although he admitted that he had a cyst in the semilunar bone, of traumatic origin.

Dawidowicz testified that at the time of the trial he had numbness in his thumb and last two fingers, a sensation of numbness.  During all of his working life, both before and after his service in the army, he had operated a precision screw machine, of a type known as "Brown and Sharp 00", manufacturing various metal parts. He was employed by the Newton Manufacturing Company in 1948, was recalled to the army in 1950, discharged in 1952, and since that time had been doing the same type of work "off and on".  He could not do his work as well as he could before the accident, because of his wrist. "You have to have the touch and the feel of the tool". The condition was only partially improved by the opera-

tion in February, 1955. The company had been very considerate of him, and allowed him to do light, supervisory work following his operation. This was verified by his employer. Mr. Buckley, secretary of the company, testified that in February, 1955, Dawidowicz was not able to carry on with his work as a machine operator, and since that time "We gave him another type of work. * * * I understand he was going to go back to his old job as of this week." He did not know whether he had done so.

The witness, Sappington, after being qualified as to knowledge of the Brown and Sharp 00 machine by twenty-nine years experience both as an operator and as process engineer in the screw machine department of Bendix Radio, was asked this question: "Can you tell us whether a man with a 20 per cent disability of the left wrist, with limitation of motion in his wrist and hand, with numbness in his fingers, who has lost the sense of touch in his fingers, is competent to operate and set up a Brown & Sharp screw machine of the double 0 and single 0 mechanical type?" The witness answered: "I would say not." At this point there was an objection, which was overruled. Over objection, the witness then explained that the work was delicate, requiring both strength and feeling. In cross-examination, the witness was asked: "Suppose I tell you that the * * * [person in question] did operate one of these machines for a number of years, with that condition * * * what would your answer be?" The witness replied: "I would be surprised if he could do it right. * * * I wouldn't say it was impossible, but it isn't probable to go through the job as a competent operator."

It is contended that the objection cannot be considered because Williams' counsel did not object to the question until after it was answered, or move to strike the answer, and that the same question was put in cross-examination. We think there is no merit in this contention. Counsel had previously raised an objection, while the witness was being qualified, which the court overruled "for the mo-

ment", and the objection to the hypothetical question was contemporaneous with the answer. Under the circumstances, we think there was no waiver, the court treated the objection as timely in ruling on it, and the fact that counsel then cross-examined the witness does not bar him from pressing the point here. *Jones v. State,* 205 Md. 528, 536; *MacEwen v. State,* 194 Md. 492, 504.

The appellant contends that the opinion was inadmissible because Sappington had heard none of the testimony upon which the question was predicated, and his answer was based on the opinions and conclusions of others and not on his own personal knowledge. But it is well settled that if the inquiry is in a field where expert opinion may be helpful, it is unnecessary that the expert should have heard the testimony. Cf. *Coastal Tank Lines, Inc. v. Canoles,* 207 Md. 37, 44. As was said in *Marshall v. Sellers,* 188 Md. 508, 517: "If the witness is sufficiently skilful, his opinion may be adequately obtained upon hypothetical data alone, and in such case it is entirely immaterial whether he has ever seen the patient", citing 2 *Wigmore, Evidence* (3d ed.), secs. 676, 677. Nor is it material that the facts assumed in the question were testified to by other experts, if the hypothetical question contains "all material facts in evidence essential to the formation of a rational opinion." *Mullan v. Hacker,* 187 Md. 261, 271. See also *Bozman v. State,* 177 Md. 151, 157, *Mathiesen Alkali Works v. Redden,* 177 Md. 560, 565, and *Starr v. Oriole Cafeterias,* 182 Md. 214, 217. It is not necessary that the question include all of the facts in evidence. *Grill v. O'Dell,* 113 Md. 625, 640. In *State v. Lewis,* 57 S. E. 2d 513, 523 (W. Va.), it was said that "A hypothetical question need not cover all the facts but the party propounding the question may assume facts fairly inferable from the evidence which tends to support his theory of the case." It is generally recognized that the whole problem is one which should be left to the sound discretion of the trial court. *Quimby v. Greenhawk,* 166 Md. 335, 339. In the instant case, we think the question embraced all the essential facts relating to

the disability, which were assumed for the purpose of obtaining an expert opinion as to the effect upon the plaintiff's competence to operate the particular machine. The fact that the plaintiff had operated the machine subsequent to the accident goes only to the weight of the opinion.

Hypothetical questions have been most frequently posed in connection with medical opinions, but the range of expert testimony is not so narrowly confined. See *Empire State Ins. Co. v. Guerriero,* 193 Md. 506, 514, 515, and cases cited. See also 7 *Wigmore, Evidence* (3d ed.) § 1923. If the expert opinion is reasonably calculated to assist the jury, and not to confuse it, such testimony is admissible, in the sound discretion of the trial court, and such opinion may properly be elicited by a hypothetical question. See 2 *Wigmore, Evidence* (3d ed.) § 679. In *Benshetler v. Palumbo Motors,* 110 A. 2d 207 (Pa.), the Supreme Court of Pennsylvania held that a music instructor was properly permitted to answer a hypothetical question as to whether a professional singer, who accompanied herself on the piano, could play the piano well enough to accompany herself professionally, assuming that she had sustained a described finger injury of a permanent nature. We find no error in overruling the objection to the question in the instant case.

The final point urged is that the court erred in permitting Trooper Suthard to give opinion evidence as to ice on the road. This officer had been called by the appellant, and testified he had no recollection of the accident. However, by reference to a copy of his report, he testified that his investigation showed that the road was "icy at the spot" where the collision occurred, and that "the roadway was covered with ice". In cross-examination he testified there had been no other reports of accidents due to icy conditions of the road that day. He was asked: "Well, now, if you had passed on that roadway at that time an icy spot, which we will say was over 100 feet long, would it be fair to say that would cover both sides of the road?" Over objection,

he stated "I would say if the icy spot was over 100 feet in length, it would be on both sides of the road."

The objection was on the ground that "it is conjecture", and the trial court observed that the witness had had so much experience in travelling and observing roadways, that he was competent to express an opinion. But if we assume, without deciding, that the question was improper because it furnished insufficient facts upon which to predicate an opinion, we think it was not prejudicial. Williams had testified that he skidded for one hundred feet on ice. When asked "Do you know whether that icy spot was on the other side of the road, too?", he replied: "You mean on both the north and south lanes? I can only assume that it was."

For the reasons stated we think both judgments should be affirmed.

*Judgments affirmed, with costs.*