574 So.2d 700 (1990)
Deborah NASH
v.
Dr. Joseph COSBY and Dr. Wilheim Tietke.
88-1068.
Supreme Court of Alabama.
July 20, 1990.
As Modified on Denial of Rehearing January 11, 1991.
Robert H. Ford of Brinkley, Ford, Chesnut & Aldridge, Huntsville, for appellant.
James E. Davis, Jr. and William W. Sanderson, Jr. of Lanier, Ford, Shaver & Payne, Huntsville, for appellee Dr. Joseph Cosby.
Patrick M. Lamar of Lanier, Ford, Shaver & Payne, Huntsville, for appellee Wilheim Tietke, M.D.
HORNSBY, Chief Justice.
Plaintiff, Deborah Nash, appeals from a jury verdict in favor of defendants, Dr. Joseph Cosby and Dr. Wilheim Tietke, in a medical malpractice action. We reverse and remand for further proceedings consistent with this opinion. The record reveals that Nash has suffered from medical problems associated with her colon and rectum and that she began receiving treatment for those problems as early as 1963. On April 22, 1986, Nash consulted Cosby, who diagnosed her as having a severe urinary tract infection. Cosby had knowledge of her prior medical history and admitted her to Huntsville Hospital. While Nash was hospitalized for the urinary tract infection, Cosby called in Tietke for a consultation regarding her colon and rectal problems. Tietke made several recommendations, including a small bowel follow-through and an upper G.I. series to rule out Crohn's disease, both of which Cosby *701 ordered. The radiology department at the hospital completed the small bowel follow-through and upper G.I. series, using a formula of barium sulfate on April 24, 1986. Dr. S.H. Falwell, a radiologist, determined that there were no contraindications to the upper G.I. test and that the test was negative for Crohn's disease. Nash was discharged by Cosby and was instructed to take Metamucil, a laxative, to assist her with bowel movements.
In June 1986, Nash went to Dr. LeWayne Lambert with a fecal impaction. He admitted her to Crestwood Hospital in Huntsville, where the impaction was removed nonsurgically. The fecal material in her colon contained 10%-20% of barium. In March 1987, Dr. Mark Carpenter performed a subtotal colectomy on Nash, removing approximately eight inches of her colon.
On May 19, 1987, Nash filed a complaint, alleging medical malpractice against Cosby relating to her oral ingestion of barium for the upper G.I. series and his failure to remove the barium, which she states was the reason for the subtotal colectomy. On April 22, 1988, Nash amended her complaint to state similar causes of action against Tietke, Huntsville Hospital, Marsha Daniell (a 4th-year medical student working at Huntsville Hospital), and Falwell. Huntsville Hospital, Daniell, and Falwell were dismissed from the lawsuit prior to trial. The case was tried before a jury, which returned a verdict in favor of Cosby and Tietke on February 1, 1989. This appeal is taken from the trial court's judgment based on that verdict.

Deferred Ruling on Nash's Motion in Limine
Prior to trial, Nash filed a motion in limine to preclude the defendants from eliciting testimony concerning information contained in her medical records about a drug screening test and the results thereof. The trial court, after hearing argument by counsel, admonished the defendants to refrain from discussing the drug screening test until a voir dire hearing by the court could be held to determine its admissibility. The trial court deferred ruling on Nash's motion in limine until evidence was presented by the parties.
Nash argues that it was an abuse of discretion for the trial court to defer its ruling on her motion in limine and, specifically, argues that the trial court's deferring its ruling prejudiced her because, as a result of it, she was forced to disclose the drug screening test evidence during jury selection and direct examination. We disagree with Nash's argument.
It is well recognized that only adverse rulings by the trial court are reviewable on appeal. See Lewis v. Providence Hospital, 483 So.2d 398 (Ala.1986). Because the trial court deferred its ruling, there is no adverse ruling for review. Although Nash cites C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1, 15 (1981), as supporting her position, we find that a close review of the article supports the trial court's exercise of discretion:
"Most courts addressing the issue have concluded that a trial judge does not commit reversible error when he denies or overrules a motion in limine. Indeed, a trial judge's decision to take the motion under advisement until the matter arises at trial or simply to refuse to entertain the motion at all is generally deemed not to constitute reversible error. Considerable discretion is vested in the trial court regarding these matters. Consequently, in order to show reversible error, the unsuccessful moving party has the nearly insurmountable task of proving that the trial judge abused his discretion. Filing a motion in limine has its advantages as discussed earlier in this article, but the motion is unlikely to be valuable as grounds for reversal on appeal."
We find no abuse of discretion and therefore no reversible error in the trial court's deferring its ruling on Nash's motion in limine until the matter arose at trial.

Noncompliance with Pretrial Order; Refusal of Expert Testimony
Tietke called as a fact witness Dr. R.G. Danley, Jr., one of Nash's prior treating *702 physicians. Danley was not named by any of the parties as an expert witness pursuant to the pretrial order entered June 30, 1988. During Nash's cross-examination of Danley, she attempted to elicit expert testimony, and Tietke objected on the ground that Nash had not named Danley as an expert witness pursuant to the pretrial order. The trial court sustained Tietke's objection and precluded Danley from testifying as an expert witness.
In Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 338 (Ala.1987), this Court stated:
"The refusal to permit expert witnesses to testify because of a party's failure to comply with the pre-trial order is clearly a matter of discretion not subject to reversal. Electrolux Motor AB v. Chancellor, 486 So.2d 414 (Ala.1986)."
We find no abuse of discretion by the trial court in refusing to allow a witness not previously named as an expert to give expert opinions. See Rules 16 and 26(b)(4), A.R.Civ.P.

Jury Charge
The trial court instructed the jury in its oral charge:
"Mrs. Nash claims that she suffered damages as a result of the alleged negligent act or acts of the defendants in rendering medical services to her. More specifically, she alleges that Dr. Tietke's consultation and resulting recommendation of an upper G.I. series with a small bowel follow-through was a negligent act. Also, she alleges more specifically that when Dr. Cosby caused to be performed on her an upper G.I. series with small bowel follow-through, that this was a negligent act. She further alleges that as a result of those negligent acts, she suffered an impaction in June of 1986, and that this impaction caused her to suffer the removal of her colon eight months later in March of 1987."
Nash objected to the trial court's oral charge, arguing that it was incorrect and incomplete. Specifically, Nash claimed that the jury charge did not include her claims against Cosby and Tietke for their failure to remove the barium and their failure to warn her concerning the need to expel the barium. The record shows that this objection was made after the jury retired to begin its deliberations; thus, the objection was untimely. See Rule 51, A.R. Civ.P. See, also, Hancock v. City of Montgomery, 428 So.2d 29 (Ala.1983).

Hypothetical Questions to Experts
Nash claims that the trial court erred by disallowing certain hypothetical questions posed to her expert witness, Dr. Neil J. Farber. We agree.
For the sake of clarity, we quote the hypothetical questions Nash asked of Dr. Farber that she claims were improperly refused by the trial court:
"Q Now, would you, please, further assume, Dr. Farberand this is taken fromthisI'll read paragraph by paragraph, if it please the court, taken from the physician's notes, KUB report, physician's progress notes, consult notes from Dr. Swartz [consulting gynecologist], and discharge summary of the Crestwood Hospital. According to the note by Dr. Lambert on 7-1-86, `The abdominal mass appears to be reduced to retain barium from last hospitalization one (1) month prior to admission.' On 7-2-86, Dr. Lambert ordered Deborah to take GoLytely. However, this did not result in formed stool being
"THE COURT: Mr. Ford, would you slow down?
"Q passed. Dr. Lambert noted that on July 4, 1986, he might, `have to consider surgical removal of barium impaction since it has been there three (3) months.' On 7-5-86, Dr. Lambert noted, `Doubt that amount of barium and degree of impaction will resolve short of surgical intervention. Apparently this bolus is evident on X-ray as early as April the 24th, 1986.' By 7-14-86, there had been, `Almost total removal of the barium containing fecal impaction.' Therefore, the barium impaction was inside Deborah from 4-24-86 to 7-14-86, or approximately 11 weeks. Deborah suffered from cervical and uterine prolapse *703 as a result of the barium fecal impaction. She also suffered from cystocele. On 7-16-86, a colonoscopic procedure was performed which revealed, `And the rectosigmoid multiple deep ulcerations were noted with exudative bases.' Further assume that Deborah was discharged from Crestwood Hospital on 7-21-86 after spending 25 days in the hospital. The discharge summary of Dr. Lambert listed discharge diagnosis as: `# 1mechanical bowel obstruction, # 2barium and fecal impaction, # 3-chronic constipation, # 4mild dehydration, # 5uterine prolapse, # 6cystocele, # 7history of recurrent urinary tract infections, # 8history of recurrent perirectal abscess.' Dr. Lambert stated that, `Deborah developed the uterine prolapse and the cystocele from the mass of barium and fecal impaction.' It was felt at that time that she would probably need a colectomy in the near future from the discharge notes. Now, based upon those additional facts, Dr. Lambert, do you have an opinion within a reasonable degree of certainty as to cause of the mechanical bowel obstruction and the prolapse and cystocele?
"A I do.
"Q What is that opinion?
"MR. DAVIS: Here, we again object on the grounds that the people that were involved with the case are capable of establishing what was the cause of that. There is a dispute with regard to whether one existed that's within the record itself. It assumes, in the question that he asked, that it developed from the impaction. So he's merely asked to confirm something that somebody else has said and that they already have an opinion expressed with regard to that.
"THE COURT: Sustained.
"Q Further assume that in March of 1987, Deborah was admitted to the Huntsville Hospital, on March 27th, 1987, she underwent a subtotal colectomy with primary ilioproctostomy anastomosis. Now, you have read and studied the report of operation, along with the other medical records from Huntsville Hospital, have you not, sir?
"A Yes.
"Q Do you have an opinion as to the cause of this surgery?
"MR. DAVIS: We, again, object on the basis that that's the improper way to hypothecate that in the question.
"THE COURT: Sustained.
"Q Dr. Farber, assuming all the facts that were stated before without restating them, beginning with the February 1963 treatment of Deborah for her impacted feces all the way through the hypothetical stated before, adding the following facts: That in March of 1987, Deborah was admitted to the Huntsville Hospital and then on March 27, 1987, she underwent a subtotal colectomy primary ilioproctostomy anastomosis. Do you have an opinion as to the cause of this surgery?
"MR. RODGERS: We object, again, Your Honor. That question's so vague this jury couldn't possibly understand. Of all the facts that have been sustained and allowed
"THE COURT: I sustain the objection.
"MR. FORD: I have no further questions."
The record shows that the medical records upon which the hypothetical question was based had been previously admitted into evidence. We conclude that Dr. Farber should have been allowed to give his opinion as to causation, even though that opinion may have been based, at least in part, on the opinions, diagnoses, and conclusions of other doctors. In the usual case, a medical expert will refer to medical records in preparing to testify. Thus, it is unavoidable that an expert's conclusion in such a case will be influenced to some degree by the opinions and diagnoses found in those records.
Alabama has long followed the rule disallowing expert testimony that is based in part on the conclusions or opinions of others. See, e.g., Chinevere v. Cullman County, 503 So.2d 841 (Ala.1987); Salotti v. Seaboard Coast Line R.R., 293 Ala. 1, 299 So.2d 695 (1974). However, we choose *704 today to modify that rule of law to reflect a more enlightened viewpoint.
The rule disallowing expert opinion testimony that is based in part on the opinion of other persons has a long history. However, the recent trend has been toward allowing expert testimony that is based upon medical or hospital or psychological records, even in some cases where those records are not in evidence. See 31A Am. Jur.2d Expert and Opinion Evidence, §§ 85, 186 (1989). This trend recognizes that because of a growing tendency toward division of services in the medical field, any person who undertakes to make a diagnosis must necessarily rely on the opinions and tests of other persons. Records that are sufficient to support a diagnosis in a hospital should be sufficient to form the basis for expert testimony in the courtroom. Id.
"There is no mysterious logical fatality in basing `one expert opinion upon another'; it is done every day in business and in applied science." 2 Wigmore, Evidence § 682 (J. Chadbourn rev. 1979). See Buckler v. Commonwealth, 541 S.W.2d 935 (Ky. 1976); Schmidt v. Gibbons, 3 Ariz.App. 147, 412 P.2d 716, vacated on other grounds, 101 Ariz. 222, 418 P.2d 378 (1966); Missouri Pac. R.R. v. Sorrells, 201 Ark. 748, 146 S.W.2d 704 (1941); Holstein v. Quality Excelsior Coal Co., 230 Ark. 758, 324 S.W.2d 529 (1959); Doherty v. Dean, 337 S.W.2d 153 (Tex.Civ.App.1960); Williams v. Dawidowicz, 209 Md. 77, 120 A.2d 399 (1956); Miller v. American Car & Foundry Co., 145 S.W.2d 472 (Mo.App. 1940); Travelers Ins. Co. v. Childs, 272 F.2d 855 (2d Cir.1959); United States v. Williams, 447 F.2d 1285 (5th Cir.1971). See also Pierce, 5 Am.J. Trial Adv. §§ 277, 281 (1981).
In United States v. Partin, 493 F.2d 750 (5th Cir.1974), the court specifically allowed expert testimony that was based upon medical records that contained opinions and diagnoses of other persons. While Partin was a criminal case, we think its rationale is applicable to the expert-opinion-testimony scenario presented in this case. In Partin, the court ruled that the medical records themselves were not admissible unless the preparing doctor was available for cross-examination. However, the court ruled that the defendant's expert witness was entitled to rely on those records in forming his opinion, despite the fact that those records contained the opinions of other experts and could not be admitted directly into evidence. With his testimony based upon hospital records, the expert was allowed to state that the subject of those records suffered from schizophrenia and would have difficulty seeing and hearing. Partin, 493 F.2d at 762-64.
In Alabama medical records are admissible evidence, provided that the proper predicate has been laid. Carroll v. State, 370 So.2d 749 (Ala.Cr.App.1979). See Rule 44, A.R.Civ.P. In this case Nash's medical records had been properly admitted into evidence and Dr. Farber was asked hypothetical questions that assumed facts that were stated in those records. Dr. Farber should have been allowed to testify in response to those hypothetical questions. We cannot state the proposition more succinctly than did the Supreme Court of Indiana:
"In the realm of expert testimony, it is obviously preferable to have the opinion derived from a distillation of as much reliable information as possible. This results in a more intelligent opinion because an opinion is only as good as the data upon which it is based. Any alleged lack of reliability can be brought out on cross examination, and, as long as the expert is otherwise qualified, should go to the weight of the evidence and not its competency. The fact that a psychiatric expert bases his opinion in part on reports... does not make the testimony and opinion of the expert excludable."
Smith v. State, 259 Ind. 187, 285 N.E.2d 275 (1972).
Because Dr. Farber based his testimony on the plaintiff's medical records and was subject to cross-examination regarding the substance of his opinion, we believe that he should have been allowed to give the jury the benefit of his opinion under the rules of law expressed above.
*705 This error becomes even more evident in light of the fact that the defendants were allowed to elicit opinion testimony from their expert witness in a manner that was not allowed to the plaintiff. The defendants' expert, Dr. Dowd, had no firsthand knowledge of Deborah Nash's condition, but based his opinion strictly upon his review of the medical records generated by Nash's treatment. The plaintiff's objections to this testimony were overruled by the trial court.
In Alabama Power Co. v. Robinson, 447 So.2d 148, 152 (Ala.1983) (as modified on application for rehearing), this court stated:
"An expert witness may give his opinion based on his own knowledge of the facts, stating those facts and then his opinion, or he may give an opinion based upon a hypothetical question as to facts already in evidence or evidence to be subsequently admitted. Where personal observation is lacking, however, an expert witness cannot be permitted to give his expert opinion until facts upon which his opinion is to be based have been properly hypothesized before him." (Citations omitted.)
In this case, Dr. Farber was asked hypothetical questions that assumed certain facts drawn from Deborah Nash's medical records, which had been properly admitted into evidence. We hold that those hypothetical questions were not objectionable merely because they assumed facts based on another doctor's observation or diagnosis. The rule disallowing expert testimony based on opinions or conclusions of others simply ignores the reality of current medical practice. It cannot be reasonably argued that doctors and other medical practitioners do not rely on the observations and conclusions of other medical professionals in making diagnoses. Thus, it is appropriate that those same conclusions and observations should be taken into account by any medical expert testifying as to an applicable standard of care or as to a breach thereof. We believe that use of such conclusions and observations would only improve the reliability of expert testimony on medical issues. Smith v. State, supra.
Because Nash's expert should have been allowed to give his response to the hypothetical questions posed to him, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
STEAGALL, Justice (dissenting).
Deborah Nash's hypothetical questions to her expert witness, Dr. Neil J. Farber, were based on records containing the opinion of another doctor, Dr. LeWayne Lambert. Alabama case law is clear that testimony based in part upon the conclusions or opinions of others is not allowed. See Chinevere v. Cullman County, 503 So.2d 841 (Ala.1987); Salotti v. Seaboard Coast Line R.R., 293 Ala. 1, 299 So.2d 695 (1974); and Armstead v. Smith, 434 So.2d 740 (Ala. 1983). Both United States v. Partin, 493 F.2d 750 (5th Cir.1974), appeal after remand, 552 F.2d 621 (5th Cir.1977), cert. denied, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), and Smith v. Smith, 259 Ind. 187, 285 N.E.2d 275 (1972), cert. denied, 409 U.S. 1129, 93 S.Ct. 951, 35 L.Ed.2d 261 (1973), cited by the majority, are criminal cases dealing specifically with the admission of expert psychiatric testimony based upon medical records containing expert opinions as to the sanity of another and, in my opinion, are limited to that context.
In regard to the testimony of the defendants' expert, Dr. Alan G. Dowd, Nash's objection was premised on the fact that Dowd had never examined the plaintiff. However, this Court held in Ravi v. Williams, 536 So.2d 1374 (Ala.1988), that a physician without personal knowledge of the facts may nonetheless testify if that testimony is based upon either medical records or facts that are in evidence. The record discloses that Dowd's testimony was not based upon another expert's opinion, as the majority asserts, but was, rather, based upon the complete hospital record from *706 Huntsville Hospital and Dr. Joseph Cosby's office records, all of which were in evidence. Dowd's firsthand knowledge of Nash's condition is not required, under Ravi v. Williams, supra.
I, therefore, respectfully dissent.
MADDOX, J., concurs.