Jerry Bailey was convicted for the murder of his wife (see Ala. Code 1975, § 13A-6-2) and was sentenced to life in prison. The Court of Criminal Appeals reversed his conviction on the ground that the expert witness, Dr. Alfredo Paredes, had improperly based his opinion on facts and conclusions contained in an autopsy report prepared by another expert. Bailey v.State, 590 So.2d 351 (Ala.Crim.App. 1990). In light of this holding, the Court of Criminal Appeals did not address Bailey's argument that the State had not presented sufficient evidence to convict him. The State of Alabama petitioned this Court for a writ of certiorari pursuant to Rule 39, A.R.App.P., on the ground that the Court of Criminal Appeals had incorrectly reversed the conviction on the expert opinion issue. Also, Bailey petitioned this Court for a writ of certiorari, arguing that the Court of Criminal Appeals had improperly failed to address his sufficiency-of-the-evidence argument. We granted both petitions and issued the writs. We set aside the judgment of the Court of Criminal Appeals, reverse the conviction, and render a judgment of acquittal for the defendant.
In its opinion, the Court of Criminal Appeals stated:
 "The state's evidence tended to show that on August 27, 1981, Mary Bailey, the appellant's wife, was found face down in a pond in Covington County, Alabama. She had over a liter of water in her lungs. The victim was a school teacher. On the date that she drowned, she had planned to ride home from school with one of her co-workers. As they walked to the parking lot, she saw the appellant waiting for her.
 "The appellant testified that he drove to Sellers Pond so that he could take his daily walk. He said that the victim sat at a bench by the pond reading a paper while he walked. He testified that his wife was gone from the bench when he finished his walk. In his statement to the police, the appellant said that he looked around and saw his wife face down in the pond. Appellant further stated that he tried to revive her, but was unsuccessful. He said he then went to call the Red Level police station. At the time he made a statement to the police, the appellant had scratches on his neck. Appellant stated at trial that the reason he had the scratches was that he got them from trying to help the victim.
 "Several witnesses testified that the appellant and the victim were having marital problems. Evidence revealed that the appellant periodically sent flowers *Page 356 
to a Sue Champion while the victim was still alive. The notes read, 'love you' or 'love you forever.'
 "Dr. Alfredo Paredes, a forensic pathologist, testified as to the cause of death. He also stated that the victim took medication for dizziness and that if a person fainted he would fall where he was standing. Dr. Paredes's testimony, however, was based on an autopsy report prepared by Dr. Thomas Gilchrist. This report, when reviewed by Dr. Paredes, contained Dr. Gilchrist's conclusion as to the victim's cause of death.
 "Police Investigator Robert Johns testified that he arrived at Sellers Pond shortly after the appellant called the police. Johns searched the area and checked the road that the appellant said he had walked. That witness said that the road was sandy dirt, which would tend to leave distinctive footprints; however, he said no footprints were present. The victim's shoes and glasses were never found, even after the pond was drained.
 "There were four insurance policies on the victim's life. The appellant received a payment of $27,406 in 1981 and $21,729 in 1982. The appellant also received $12,211 from the State Teachers' Retirement System.
 "Since the appellant's conviction must be reversed, we will address only that issue which requires reversal."
 Expert Testimony
In its opinion, the Court of Criminal Appeals determined that Dr. Paredes's testimony as an expert was based partly on conclusions made by another expert in the autopsy report. The court relied upon this Court's decision in Salotti v. SeaboardCoast Line R.R., 293 Ala. 1, 299 So.2d 695 (1974), and on its own decision in Wesley v. State, 575 So.2d 108 (Ala.Crim.App. 1989). However, this Court has reversed the judgment in that case. Ex parte Wesley, 575 So.2d 127 (Ala. 1990); see also Nashv. Cosby, 574 So.2d 700 (Ala. 1990). In Nash and Ex parteWesley, we enunciated the rule that a medical expert may give opinion testimony based in part on the opinions of others when those other opinions have been admitted into evidence.
In the present case, the expert witness, Dr. Paredes, relied on the autopsy report prepared by another expert. The autopsy report was in evidence at the time of Dr. Paredes's testimony. Therefore, because the Court of Criminal Appeals relied on a case that we subsequently reversed in Ex parte Wesley, and because of our decision in Nash, we reverse the Court of Criminal Appeals' holding on this issue.
 Sufficiency of the Evidence
In a murder case, the state must prove the corpus delicti beyond a reasonable doubt:
 " 'In the prosecution of an accused for the offense of murder, the State must prove the corpus delicti which includes: (1) the death of the victim named in the indictment, and (2) that the death was caused by the criminal agency of another. See Johnson v. State, 378 So.2d 1164
(Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979). The State must further show that the defendant caused the death of the victim and the intent to cause such death. Section 13A-6-2, Code of Alabama 1975. Intent may be inferred from the use of a deadly weapon. [Citations omitted.] Further, circumstantial evidence alone may be sufficient in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime to sustain a conviction.'"
Breeding v. State, 523 So.2d 496, 500 (Ala.Crim.App. 1987) (quoting Scanland v. State, 473 So.2d 1182, 1185
(Ala.Crim.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602,88 L.Ed.2d 581 (1985)).
Bailey asserts that the evidence presented does not establish: (1) that his wife was killed; (2) that she was killed by him; or (3) that he caused her death. Further, he argues that there was no evidence of a struggle or foul play. In denying Bailey's motions for directed verdict and for acquittal, the trial court stated that although the State's case was "shaky," it would allow the jury to decide. Bailey, *Page 357 
however, argues that the circumstantial evidence presented by the State supports an inference of innocence and that he was therefore entitled to a judgment of acquittal.
Much of the evidence in this case is circumstantial, but circumstantial evidence does not preclude the jury from determining a defendant's guilt or innocence. In Ex parteDavis, 548 So.2d 1041 (Ala. 1989), we stated that either circumstantial evidence or direct evidence may be used to prove the guilt of a defendant. Further, in reviewing the sufficiency of the evidence, we must view the circumstantial evidence in the light most favorable to the prosecution to determine whether the jury might reasonably have found that the evidence excluded every reasonable hypothesis except guilt. Ex parteMauricio, 523 So.2d 87 (Ala. 1987); Robinette v. State,531 So.2d 682 (Ala.Crim.App. 1987); Barnes v. State,429 So.2d 1114 (Ala.Crim.App. 1982); Cumbo v. State, 368 So.2d 871
(Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
The general standard by which we review the evidence is as follows:
 "The action of the trial court in denying a motion for acquittal, in denying a motion to exclude the evidence, . . . and in denying a motion for a new trial, must be reviewed by determining whether there existed legal evidence before the jury, at the time the motions were made, from which the jury by fair inference could have found the defendant guilty [beyond a reasonable doubt]. Thomas v. State, 363 So.2d 1020 (Ala.Crim.App. 1978)."
Robinette v. State, supra, at 687.
The more specific test to be applied in reviewing the sufficiency of circumstantial evidence is not whether the evidence excludes every reasonable hypothesis except that of guilt, but whether the jury might reasonably so conclude.Ex parte Mauricio, supra; Robinette v. State, supra; St. Johnv. State, 473 So.2d 658 (Ala.Crim.App. 1985); Jones v. State,432 So.2d 5 (Ala.Crim.App. 1983); German v. State,429 So.2d 1138 (Ala.Crim.App. 1982); Cumbo v. State, supra. Under this test, a jury verdict of guilt based solely on circumstantial evidence cannot be affirmed where the evidence reasonably supports an inference of innocence.
Applying these legal standards to the facts in this case, we conclude that the circumstantial evidence presented by the State was insufficient to allow the jury to fairly infer, beyond a reasonable doubt, that Bailey murdered his wife. Further, the evidence presented does not allow the jury to reasonably conclude that no reasonable hypothesis of innocence exists. The evidence presented tended to support an inference that Mrs. Bailey, while standing on the edge of the pond, became dizzy and fell forward into the pond and drowned.
The record reveals that Bailey picked his wife up from school on the day of her death. Bailey's testimony indicated that on the days that he took his walks his wife usually stopped at their house to change her clothes before accompanying him to the pond where he walked. Bailey, however, testified that on the day of her death Mrs. Bailey did not appear well and that she did not go into the house to change her clothes. Because of this, Bailey said, he went into the house and got his wife a cup of coffee and the newspaper. Although the Court of Criminal Appeals stated otherwise, the record reveals that Bailey testified that Mrs. Bailey let him out of the car for his walk and that she proceeded to the pond, and that when he arrived he did not see her immediately but eventually he did see her in the water.
Bailey testified that he jumped into the water to save his wife. He further testified that when he jumped into the water to get his wife, he might have hit her with his foot. He testified that he tried to get her out and that he thought her head was caught under some pine tree roots. He testified that he scratched his neck on these tree roots while getting his wife out of the water. He said that he finally got her to shore, where, he said, he tried to revive her. Not being able to revive her, he said, he went to the police station, where he appeared visibly upset and was crying. The record also reveals that Bailey told *Page 358 
several persons that he wished he had known how to save his wife.
The autopsy report listed the cause of death as drowning. The report showed no evidence of trauma on the body other than a contusion to the left shoulder. Toxicologic studies were negative, but the record reveals that the body had been embalmed before it was sent to the Department of Forensic Sciences. Dr. Paredes testified that the embalming of the body would not create any major changes with a body in cases of drowning except possibly in the rendering of the toxicologist's report.
Autopsy evidence also indicated chronic disease of the heart and lungs that may have contributed to Mrs. Bailey's death. In fact, Dr. Paredes testified that although Mrs. Bailey's heart and lung disease were not advanced, she had a narrowing of the arteries that could have caused her to become dizzy. Dr. Paredes, however, did not testify that Mrs. Bailey took medication for dizziness. He was unaware of her prior medical history. He further testified that a person who fainted would fall where he or she was standing. In his opinion, he thought that Mrs. Bailey was alive when she entered the water, because of the amount of water in her stomach and lungs. The autopsy report concluded that the manner of her death was undeterminable, because it depended on how she came to be in the water.
Investigation of the area of the accident revealed no evidence of a struggle or scuffle at the pond, and the body showed no evidence of a struggle. The autopsy report stated that there was no evidence of trauma except for the contusion on Mrs. Bailey's left shoulder. Mrs. Bailey's clothing was not torn, but was stained by water and mud. Consistent with the defendant's testimony that he found his wife face down in the pond, these stains appeared only on the front side of her clothing.
Police investigator Robert Johns testified that he searched the road that Bailey allegedly took his walk on, but that he found no signs of footprints in the sandy dirt. Johns, however, further testified that by the time he made this investigation four or five automobiles had travelled along this public road and 15 or more people had arrived at the scene. He admitted that this activity could have erased the footprints. Johns also testified that he searched the area where Mrs. Bailey's body was found but that he found no evidence of a struggle or scuffle.
The record reveals that a search was made for Mrs. Bailey's shoes and glasses (she wore her glasses all the time), the coffee cup, and the newspaper. The Court of Criminal Appeals incorrectly stated in its opinion that Mrs. Bailey's shoes and glasses were not found. One shoe was recovered, as well as her glasses and the newspaper. However, one shoe was not recovered and the coffee cup was not recovered. There was testimony that the shoe could have been sucked through a drain pipe which led into a dammed area that was not searched.
There was evidence that Bailey received $12,211.11 from the Alabama Teachers' Retirement System. Mrs. Bailey had been enrolled as a member of the Retirement System since 1966 and she had retained control over the beneficiary designation throughout that period. The evidence also indicated that Bailey received $49,135.99 in insurance proceeds from policies that were purchased in 1971 and 1978. Mrs. Bailey had also retained control over the beneficiary designation for the insurance policies.
The record reveals that several witnesses testified that Mrs. Bailey had been suffering from and complaining about dizziness prior to the time of her death. In fact, one of the witnesses had given Mrs. Bailey some medication, Antivert (a medication for inner ear problems), to help control her loss of balance. The record also reveals that one of Mrs. Bailey's co-workers had seen Mrs. Bailey stumble on some stairs and fall. There was other testimony that Mrs. Bailey appeared to be ill before her death. There was testimony that she had complained about being dizzy, that she was pale, and that she had lost weight.
The record reveals that Mrs. Bailey was not a proficient swimmer, but that she could "dog paddle." Also, she generally *Page 359 
would not go into deep water. Evidence showed that the pond where Mrs. Bailey drowned was man-made and that it sloped from the bank. The water in the pond where Bailey said he found Mrs. Bailey was approximately three feet deep.
In addition, Bailey's daughter, Diane Knox, testified that on the day of her mother's death, her mother had told her that she was going for a walk with her father and would be home later to go to a birthday party. Both of the Bailey children, who were living with their parents at the time of Mrs. Bailey's death, testified that, aside from normal marital disputes, their parents appeared to be getting along well together. Diane Knox additionally testified that her mother was aware that Bailey knew Sue Champion and knew that he had purchased some gasoline for her six months prior to Mrs. Bailey's death.
The nature of the circumstantial evidence presented in this case requires the jury to speculate as to whether Mrs. Bailey was murdered by her husband. We stated in Ex parte Mauricio,supra, at 94 (citations omitted):
 "A finding of guilt from circumstantial evidence is based on the 'inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts.' This is to be distinguished from a supposition, which is 'a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur.' 'Mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence.' "
Although the jury in the present case could consider circumstantial evidence and draw permissible inferences from such evidence, an inference beyond a reasonable doubt that Mrs. Bailey was murdered by her husband does not arise from the evidence presented in this case. Further, the evidence before us supports an inference that Mrs. Bailey, while standing on the edge of the pond, became dizzy and fell forward into the pond and drowned, without any involvement by Bailey. In addition to this, we note that Mrs. Bailey drowned in August 1981, but that Mr. Bailey was not tried for her alleged murder until April 1989 — approximately 8 years after her death. The record does not reveal the reason for the delay.
Our law is structured so that the guilty, not the innocent, shall be punished; therefore, if circumstantial evidence permits an inference consistent with innocence, such evidence will not support a conviction. See Tanner v. State, 291 Ala. 70, 277 So.2d 885 (1973). In the present case, the circumstantial evidence presented by the State raised a strong inference of innocence; thus, a jury could not reasonably conclude that no inference of innocence existed. Consequently, the issue became a question of law for the trial court. See Exparte Mauricio, supra. We conclude that the trial court improperly denied Bailey's motions for a directed verdict and for an acquittal at the close of the evidence. The Court of Criminal Appeals reversed the conviction, but did so on an improper ruling. That court's judgment is set aside, and, for the reasons herein stated, the conviction is reversed and a judgment of acquittal is rendered.
89-1663 — HOLDING AS TO EXPERT TESTIMONY REVERSED.
89-1676 — JUDGMENT OF REVERSAL SET ASIDE; CONVICTION REVERSED; AND JUDGMENT OF ACQUITTAL RENDERED.
MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY and INGRAM, JJ., concur in 89-1663, and dissent in 89-1676. *Page 360