608 So.2d 743 (1992)
T.G.S.
v.
D.L.S.
2910146.
Court of Civil Appeals of Alabama.
September 25, 1992.
*744 Mary F. Gunter of Woodham & Gunter, P.C., Abbeville, for appellant.
*745 Steven K. Brackin of Lewis, Brackin & Flowers, Dothan, for appellee.
THIGPEN, Judge.
This case involves post-divorce proceedings.
T.G.S. (father) and D.L.S. (mother) divorced in March 1988, and custody of their minor child, H.D.S., was awarded to the mother. The father was ordered to pay child support and he was given visitation rights. At the time of the divorce, the mother was pregnant with the parties' second child, A.G.S. Following A.G.S.'s birth, the mother petitioned for and was granted additional child support.
After the mother's second marriage and divorce, she married a third time, and she and the children moved to Georgia. The mother testified that prior to her third marriage, she telephoned the father to make different arrangements for future visitation. When the father refused, the mother filed a petition to modify, requesting both a change in visitation and an increase in child support. The father answered the mother's petition, contending that she was interfering with his visitation rights. Additionally, the father included in his answer a counter-petition, requesting longer visitation with his children, and requesting that the trial court impute income to the mother in accordance with Rule 32, Alabama Rules of Judicial Administration, thereby decreasing his support payments.
The same day that the father filed his answer and counter-petition, H.D.S. was examined by Dr. Nickelsen, a pediatrician, because the mother alleged possible sexual abuse of H.D.S. by the father. Dr. Nickelsen found no physical evidence of abuse, but he found the mother to be credible, and he therefore forwarded his evaluation results to the Georgia Department of Family and Children Services (DFCS).
A DFCS social worker, Ms. Benedict, investigated the report of alleged sexual abuse. She was convinced that H.D.S. had been sexually abused, based on interviews with the mother and with the child. These interviews included the child's detailed recitation of sexual activity, which Benedict said indicated knowledge beyond that of a normal four-year-old. Additionally, Benedict stated that H.D.S. told her that the father had abused her sister, A.G.S.
In May 1990, the father amended his counter-petition requesting custody of the children, alleging that H.D.S. had been abused by a third party while in the mother's custody, and that the mother should have been aware of this abuse. The mother amended her petition to modify to request that the visitation rights of the father be terminated.
The father filed a motion requesting a psychological evaluation of the mother, the child, and himself, contending that the mother had coached H.D.S. in her accusations, and this motion was granted. The mother, the child, and the father were evaluated by the staff of Dr. McKeown, an Alabama clinical psychologist. At trial, however, the court did not allow Dr. McKeown to testify because of the trial court's determination that Dr. McKeown's assessment of H.D.S.'s situation was based on hearsay. H.D.S. was later examined by a psychologist in Georgia, who also concluded that the child had been sexually abused. A social worker with the Barbour County Department of Human Resources also interviewed H.D.S. on two separate occasions.
Following an ore tenus proceeding, the trial court ordered that the father's visitation "should not be terminated but should be supervised to some extent out of an abundance of caution due [to] the seriousness of the allegations." The trial court's order then set forth precise visitation instructions. Also, the trial court denied the mother's request for an increase in child support.
The father then filed a motion to amend the trial court's order, requesting expanded visitation and requesting a method of corresponding with the children. The trial court denied the father's motion to amend, except as concerned the transmittal of gifts, cards, etc.; hence, this appeal.
The father's first issue is whether the trial court's refusal to admit into evidence *746 the testimony and medical records of Dr. McKeown constitutes reversible error. Specifically, the father argues that the testimony and medical records of Dr. McKeown should have been admitted because such evidence was based on Dr. McKeown's firsthand knowledge of H.D.S. and her parents, and because Dr. McKeown's expert opinion was predicated upon opinions and records of a type customarily relied upon by experts in his profession.
We begin our analysis of this issue by stating the traditional Alabama rule that expert testimony based on the conclusions or opinions of others is not admissible. See Chinevere v. Cullman County, 503 So.2d 841 (Ala.1987).
In Nash v. Cosby, 574 So.2d 700 (Ala. 1991), however, our Supreme Court modified the traditional rule "to reflect a more enlightened viewpoint." Nash, supra, at 704. The Supreme Court stated that "the recent trend has been toward allowing expert testimony that is based upon medical or hospital or psychological records, even in some cases where those records are not in evidence." Nash, supra, at 704. In Nash, the Supreme Court continued to discuss its reasoning for this modification and it ultimately reversed the trial court for disallowing an expert's opinion as testimony which was based on medical records already admitted into evidence.
Shortly thereafter, the Supreme Court clarified its decision in Nash by stating that Nash "has not changed the traditional rule followed in Alabama that the information upon which the expert relies must be in evidence." Ex parte Wesley, 575 So.2d 127, 129 (Ala.1990). In footnote one of Wesley, the Supreme Court elaborated as follows:
"In Nash we recognized that `the recent trend has been toward allowing expert testimony that is based upon medical or hospital or psychological records, even in some cases where those records are not in evidence.' 574 So.2d at 704. (Emphasis added.) There, the records upon which the expert partially based his testimony were in evidence. Our recognition of the recent trend, however, is not to be taken as an adoption of that trend, especially considering that the facts in Nash would not support our doing so. Accordingly, the phrase `even in some cases where those [medical] records are not in evidence' should be given no significance insofar as the law of this state is concerned."
Wesley, supra, at 129 n. 1.
Finally, we note that, in W.S. v. T.W., 585 So.2d 26 (Ala.1991), the Supreme Court stated the following:
"[T]he expert witness must base his or her opinion upon either (1) facts of which the witness has firsthand knowledge or (2) facts that are assumed in a hypothetical question asked of the expert. Again, the question of whether a particular witness will be allowed to testify as an expert and the scope of an expert's testimony are largely discretionary with the trial court, and its rulings in this regard will not be disturbed on appeal without a showing of palpable abuse." (Citation omitted.)
W.S., supra, at 28.
In a concurring opinion, Justice Houston stated his understanding of the Supreme Court's current position as to the admissibility of opinion testimony from expert witnesses as follows:
"It is my understanding that an expert witness may give opinion testimony based upon facts of which he has personal knowledge; based upon opinions of others, if these are opinions of a type customarily relied upon by the expert in the practice of his profession; or based upon facts that are assumed in a hypothetical question. In any event, the facts known to the expert, the opinions of others of a type customarily relied upon by the expert in the practice of his profession, and the hypothesized facts must all be facts in evidence."
W.S., supra, at 29.
Our review of the record revealed that Dr. McKeown's proposed testimony and medical records were based on information provided from an interview with *747 H.D.S. which was conducted by someone other than Dr. McKeown. Also, the record revealed that the interviewer was not called as a witness and that no reports of the interview were introduced into evidence.
Accordingly, we cannot say that the trial court committed palpable abuse of its discretion by refusing to allow into evidence the testimony or medical records of Dr. McKeown.
Second, the father argues that the trial court erred to reversal by refusing to admit into evidence testimony concerning events which occurred prior to the parties' divorce but which were undisclosed at the time of the divorce judgment. Specifically, the father contends that the trial court erred by not allowing a female witness to testify as to lesbian acts allegedly committed between herself and the mother in the presence of the children, and by refusing to allow that witness to testify for impeachment purposes concerning the mother's denial of abusing drugs in the children's presence. Also, the father contests rulings by the trial court which disallowed questioning of the mother about an abortion she allegedly underwent following a pregnancy from a subsequent marriage, and about alleged physical abuse of the mother by her parents.
We initially note that a trial court is given wide discretion in ruling on the admissibility of evidence and that its ruling will not be reversed absent clear abuse of that discretion. Williams v. Hughes Moving & Storage Co., 578 So.2d 1281 (Ala. 1991). In his brief, the father cites several cases to support his position. See, for example, Perez v. Hester, 272 Ala. 564, 133 So.2d 199 (1961); Keeton v. Keeton, 472 So.2d 1082 (Ala.Civ.App.1985); Dimitro v. Dimitro, 398 So.2d 297 (Ala.Civ.App.1981); Roberson v. Roberson, 370 So.2d 1008 (Ala. Civ.App.1979); and Lee v. Lee, 337 So.2d 372 (Ala.Civ.App.1976).
After a careful review of these and other authorities, however, we find them distinguishable from our case, and we are unpersuaded that the trial court clearly abused its discretion. These cases involved circumstances in which the parties seeking to introduce such evidence at a later hearing did not have either cause or opportunity to do so during the divorce proceeding. Most of these cases originally involved child custody agreements between the parents, and only later involved contested custody proceedings. Here, however, the record revealed no such original child custody agreement. The divorce proceeding apparently involved the litigation of child custody in an adversarial setting.
Furthermore, in Woodham v. Woodham, 539 So.2d 293 (Ala.Civ.App.1988), this court stated the following in addressing a nearly identical issue:
"Specifically, the mother contends that undisclosed facts existing at the time of the original divorce decree should have been considered by the trial court at the modification proceeding. [Citations omitted.] We conclude, after careful consideration, that the above cited authority is not applicable to the facts of this case. The mother here is attempting to modify a 1983 custody decree which altered the custody arrangements provided in the parties' 1980 divorce decree. As indicated previously, the custody provisions of the original decree were based upon an agreement between the parties. Later, in 1983, the father filed a petition to modify, which the mother contested. After a hearing on this issue, custody was transferred from the mother to the father. Under these circumstances, we feel that Brown v. Brown, 477 So.2d 454 (Ala.Civ.App.1985), is controlling. In Brown, this court held that testimony should be allowed that relates back to the last decree that either awarded or modified custody."
Woodham, supra, at 295.
Also, our review of the record revealed that the information sought to be proven by the father was substantially presented, in essence, to the trial court. For example, the mother admitted on cross-examination that she occasionally smoked marijuana during her marriage to the father. Also, the question concerning a possible abortion was answered in the negative by the mother, *748 and the father testified that the mother had been abused physically by her parents, but that he was unable to remember the exact time frame of the incidents. The trial court upheld the mother's objection to continued testimony concerning this abuse, because the father was uncertain as to when the abuse supposedly occurred. Concerning the alleged lesbian affair involving the mother, the mother testified on cross-examination that she did not recall such an affair, stating: "What I am saying is if it happened, I don't remember it."
Accordingly, we cannot say that the trial court clearly abused its discretion as to the father's second issue.
Third, the father argues that the trial court plainly and palpably abused its discretion by predicating its decision upon evidence taken from a limited ore tenus proceeding. Specifically, the father contends that the trial court erred by limiting the number of witnesses which could be called by either party and by limiting the time allowable for direct examination and cross-examination of those witnesses.
In his brief, the father bases his argument on the fact that the trial court viewed the videotaped depositions of three witnesses for the mother prior to the ore tenus proceeding, and then stated at the proceeding that the number of witnesses to be called by each party would be limited. We note, however, that the father did not object to this procedure at the time of trial and, in fact, agreed to the introduction into evidence of a transcript of each of these depositions. Accordingly, the father has waived any objection as to this issue. Cook v. Cook, 515 So.2d 1269 (Ala.Civ.App. 1987).
Furthermore, the father asserts that the trial court erroneously limited his cross-examination of the mother. After reviewing this portion of the record, however, we note that the trial court's limitation came only after an objection by the mother's attorney regarding the relevance of a question. Following a recess for lunch, the father's cross-examination of the mother was allowed to resume, with no further mention of time limitations. Accordingly, we find no error here.
Finally, the father argues that the trial court's focus on the allegations of his wrongdoings and its failure to examine the wrongdoings of the mother resulted in the trial court's applying an improper standard regarding the children's custody. Also, the father asserts that the trial court's judgment in restricting his visitation was plainly and palpably wrong.
A non-custodial parent seeking a change in child custody must show not only that the children's best interests will be materially promoted by the change, but also must show that such a change will overcome the inherently disruptive effect caused by uprooting the children. Ex parte McLendon, 455 So.2d 863 (Ala.1984). When a trial court has decided a child custody case based on ore tenus evidence, we are not likely to reverse its decision. Calabrisi v. Boone, 470 So.2d 1255 (Ala.Civ. App.1985). In such a case, in fact, we will presume that the trial court's judgment is correct and will not reverse unless there is shown an abuse of discretion or unless the judgment is unsupported by the evidence and, therefore, is plainly and palpably wrong. Calabrisi, supra. The same presumption of correctness applies to a trial court's judgment concerning parental visitation. Green v. Green, 474 So.2d 1135 (Ala.Civ.App.1985).
The record reveals that nine witnesses testified on behalf of the mother and seven witnesses testified on behalf of the father. The transcript of this testimony covers more than 700 pages, with most of the testimony being much in conflict. As mentioned earlier, the evidence is replete with accusations and innuendos suggesting that each party is an unfit parent, and that each party has lived a degenerate lifestyle. In such a situation, it is the duty of the trial court to resolve this conflict. Beene v. Hester, 471 So.2d 422 (Ala.Civ. App.1985). After reviewing the evidence and considering the applicable standards, we cannot say that the trial court abused its discretion or that its judgment is unsupported by the evidence and therefore is *749 plainly and palpably wrong as to the issues of child custody and visitation.
Based on the foregoing, this judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.