This is an appeal from the judgment of the Circuit Court of Jefferson County in a case alleging breach of contract in the sale of commercial real estate.
Al Sidwell, defendant/appellant, is the owner of real property located at 2204 First Avenue, South, Birmingham. This property was leased for five years and the tenant was granted an option to purchase the property or to renew the lease for an additional five-year term.
The owner, Sidwell, and the tenant, Avolee Dunn Wooten, negotiated from November of 1981, through June of 1982, concerning the purchase of the property. Sidwell represented that he was willing and able to perfect the sale of the building. He indicated that there was a purchase option and an outstanding mortgage on the building, but that the purchase option could be negotiated and the mortgage could be assumed. Sidwell and Wooten entered into a sales contract on June 17, 1982. In compliance with the agreement, Wooten tendered the purchase price to Sidwell and requested that he convey the land. Sidwell, however, refused to accept the tender and refused to make the conveyance.
Wooten brought suit against Sidwell for specific performance and breach of contract. At the hearing, Wooten dismissed her prayer for specific performance and included a prayer for compensatory and punitive damages on her breach of contract claim. Lowder Realty and Canterbury Realty, not originally parties, filed what they styled a "third-party complaint" against Sidwell seeking a real estate commission which they claim they are entitled to for bringing the buyer and seller together.
The circuit court found in favor of Wooten and awarded her $39,760 as compensatory damages. In addition, the court found in favor of the realty companies, and awarded them $18,250, as their 7% real estate commission. Sidwell appeals here, raising three issues.
Before addressing these issues, however, we will first address a question we raised on our own: Whether the $18,250 judgment in favor of Lowder Realty and Canterbury Realty Co. should be reversed because they were never properly made parties plaintiff in the circuit court having filed a "third-party complaint" instead of a motion to intervene, Rules 14 and 24, Ala.R.Civ.P., or, alternatively, whether we should interpret the "third-party complaint" as a motion to intervene which the court granted.
We find that in order to do "substantial justice" in compliance with Rule 8 (f), Ala.R.Civ.P., the "third-party complaint" should be interpreted as a motion to intervene granted by the circuit court. We believe this is the just result, especially in view of the fact that Sidwell did not object *Page 1038 
to the filing of the "third-party complaint" and did not otherwise raise the issue in the trial court or on appeal.
The real estate contract involved clearly indicated that the realty companies were entitled to a commission once the contract was consummated. In addition, if the realty companies are excluded from this suit, they would be obliged to file a separate suit and prove once again what they have already proven.
We believe the interests of justice will best be served by treating the realty companies' "third-party complaint" as one of intervention, because of several reasons. Sidwell had notice of the claims and was afforded due process in the current litigation. Neither Sidwell nor the circuit court, on its own motion, raised any issue or argument regarding whether the realty companies were proper parties. The realty companies had a definite interest in the lawsuit both legally and factually. To void the judgment would not comply with the spirit of our procedural rules, which must be construed "to secure the just, speedy and inexpensive determination of every action" on its merits. Rule 1 (c), Ala.R.Civ.P. It appearing that the "third-party complaint" was treated by the trial court as a motion to intervene, which was granted, we hold that the procedural requirements were met.
 I
As to the issues raised on appeal, Sidwell first contends that the circuit court erred in allowing a certified public accountant to testify regarding the content of the leases, because the witness later testified that he had not examined the leases but was testifying based on what he had been told they contained.
The testimony regarding the leases was as follows:
 "Q (Mr. Baddley) Are you familiar with whether or not the Sidwell Building had any leases concurrent with that property?
 "A (Gerald Travis) Yes, sir. It's my understanding there were two standing leases with tenants."
And further, on cross-examination:
 "Q (Mr. Stevens) But did you see those leases that are existing on the Sidwell Building? Did you actually see —
 "A (Mr. Travis) I did not examine them. I was told what they contained."
The testimony allowed into evidence at trial regarding the lease was as follows:
 "Q Have you made yourself familiar enough with the purchase to conclude that Ms. Wooten would have received those leases had she purchased the Sidwell Building?
"A Yes, sir, I have and yes, sir, she would.
 "Q Would you please acquaint the Court with the leases as far as the terms of the leases as of June of 1982?
 "A At that time there were two leases in place. One was with Cooper Green Hospital, I believe, and one was with a chemical company. There was approximately 24 months left on one lease, which paid approximately $1,200.00 a month. The other lease had approximately 24 months to run, and it ran for around $1,000.00 a month.
 "Q Have you computed the amount of rental income Ms. Wooten would have received on both of those leases —
"MR. STEVENS: Judge, we would object to that.
"Q — had she purchased the Sidwell Building?
"MR. STEVENS: Judge, we object to that.
"THE COURT: Overruled.
 "A What I computed was the difference between her cost of occupancy, which would be her net cost of being in the building, her total mortgage payment, which would have been cost of occupancy less the rental revenues she received, and calculated that over the remaining period of time, roughly 36 months. *Page 1039 
 "MR. STEVENS: Judge, we would object. That's not responsive to his question.
"THE COURT: Overruled.
 "A And approximately 12 months at $300 a month for a total of roughly $34,800.
 "Q This $34,800, Mr. Travis, represents the amount, as I understand it, of rental income Ms. Wooten would have received had she purchased the Sidwell Building?"
As the circuit court found when reviewing Sidwell's motion for new trial, "it appears that the objections to evidence regarding the subject lease were general objections — defendant's counsel said `we object to that' and did not specify any ground of objection." C. Gamble McElroy's Alabama Evidence, § 426.01 (10) (3d ed. 1977) sets forth the test to determine when a general objection, if overruled, is sufficient to predicate a claim of error on appeal. The test is as follows:
 "A general objection if overruled is sufficient to present for review on appeal the point that the evidence admitted was violative of a specific rule if such evidence is illegal and, according to the common probabilities of experience, there is a fair likelihood that such evidence cannot be made legal by the introduction of other evidence or by otherwise framing the inquiry made to the witness."
McElroy, supra, at 801-02.
We find that the evidence regarding the lease was material, relevant, and not illegal. The accountant's testimony was not admitted to prove the contents of the lease, but rather was offered to demonstrate the amounts he used to obtain his damage estimates, and, therefore, the admission of this evidence was not an error.
 II
Secondly, Sidwell contends that Donald Zegarelli of Lowder Realty had a fiduciary duty to Sidwell, that this duty obligated Zegarelli to determine if the outstanding option to purchase would vitiate the real estate contract involved here, and that failure to do so resulted in a breach of Zegarelli's fiduciary duty. Sidwell argues that Zegarelli had full knowledge of the outstanding purchase option but obtained the signatures of the purchaser and seller anyway.
We decline to address the merits of this argument because, after reviewing the record, we find that this defense was not raised at any time during the trial.
Sidwell raised this issue in his motion for new trial. The trial court denied the motion. The ruling denying a motion for new trial is presumed correct until shown to have been a plain and palpable abuse of discretion. Stauffer Chemical Co. v.Buckalew, 456 So.2d 778 (Ala. 1984). No such abuse has been shown in this case.
 III
Finally, Sidwell, represented by different counsel on appeal, argues that he is entitled to relief from the circuit court's judgment because he had incompetent or ineffective counsel at trial, and that an examination of the entire record demonstrates that he was not afforded a fair trial because of this.
In an ordinary civil case, the general rule regarding ineffective assistance of counsel is that relief from a court's judgment when a party hired his own lawyer will not be granted on the grounds of incompetent or ineffective counsel.
Sidwell's new lawyer claims that trial counsel cross-examined the accountant and then rested without presenting any evidence. Sidwell's new lawyer also asserts in his brief that the record is void of testimony from Sidwell "which could have refuted the testimony of [Wooten and the realty companies]" and that Sidwell was given "no opportunity to present the lease in question." Sidwell concludes, therefore, that "the results here are clear that [he] did not obtain a fair trial." Sidwell urges this Court to consider evidence which was not presented at trial to determine whether he received a fair trial. This we cannot do. *Page 1040 
The general rule, stated above, is applicable in this case, and we must deny Sidwell relief on this ground.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.