After a jury had convicted Ronald Harvey Wesley of capital murder and recommended that he be punished by life imprisonment without parole, the trial court sentenced him to death by electrocution. The Court of Criminal Appeals affirmed Wesley's conviction and sentence. See Wesley v. State, 575 So.2d 108
(Ala.Crim.App. 1989). We granted Wesley's petition for a writ of certiorari, pursuant to Rule 39(c), A.R.App.P. We reverse and remand.
Wesley was convicted of the intentional killings of Nikita Jackson and Lorraine Wesley. In support of his defense of legal insanity, Wesley presented the testimony of Claude L. Brown, M.D. (a psychiatrist), and C. Van Rosen, Ph.D. (a psychologist), both of whom testified that, at the time of the killings, Wesley was suffering from paranoid schizophrenia, was psychotic, and could not have appreciated the criminality of his conduct.
In rebuttal, the prosecution presented the testimony of Kamal Nagi, M.D. (a psychiatrist), and Harry Elbert McClaren, Ph.D. (a psychologist), both of whom testified that, on the date in question, Wesley could have appreciated the criminality of his conduct. The testimony of Dr. McClaren, to which at the sentencing hearing the trial court attached "great[er] significance" and "more weight" than he attached to that of Drs. Brown and Rosen, is, in pertinent part, as follows:
 "Q. [District attorney]: Doctor, based on your expertise as a forensic psychologist, based on your evaluation of Ronald Wesley, based on your review of the entire record and your observations at Taylor Hardin [Secure Medical Facility], based on your review of the collateral data, which included the police reports, which neither Dr. Brown nor Dr. Rosen looked at, and the witness interviews which you did, but which again *Page 128 
they did not do, do you have an opinion within a reasonable medical certainty as to whether Ronald Wesley on June the 4th, 1983, could appreciate the criminality of his conduct?
 "MR. TOLER [defense counsel]: Your Honor, I object to the question. It's based upon numerous matters that are not in evidence, that — various hearsay statements —
 "THE COURT: The only thing I see wrong about it, you're asking him about a medical certainty and he's not a medical doctor.
"To that extent, I sustain the objection.
 "MR. GALANOS [district attorney]: All right. Well, let me rephrase the question.
 "Q. Based on all of the foregoing, witness interviews, review of police reports, review of Taylor Hardin records, interviews with the defendant, review of his records at Taylor Hardin, and your expertise, do you, sir, have an opinion as to whether or not Ronald Wesley on June 4, 1983, could appreciate the criminality of his conduct?
 "MR. TOLER: Again, I object to the question on the grounds that a number of the bases that Mr. Galanos is referring to, being the police reports, interviews with various and sundry witnesses, are hearsay and are not evidence in this court at this point and as such the opinion would be improper.
"THE COURT: Overruled.
"You can answer it.
"Q. Doctor, do you have an opinion?
"A. Yes, I do.
"Q. What is your opinion?
 "A. I think that he could appreciate the criminality of his behavior on that day.
". . . .
 "Q. Based on all of those factors, and to be explicit, your expertise, your observations of the defendant and your interviews with him, your review of the records at Taylor Hardin, your review of the police records, your interviews with victims and witnesses, do you, sir, have an opinion as to whether or not on June 4, 1983, Ronald Wesley could conform his conduct to the requisites of law?
"A. It is my opinion he could."
Neither the police reports nor the medical records upon which Dr. McClaren relied in order to formulate his opinion were in evidence. It is his testimony based on these reports and records that is at issue.
 " '[W]itnesses, including medical witnesses, cannot testify to facts of which their knowledge is derived from the unsworn statements of others.' Hurst v. State, 356 So.2d 1224, 1236
(Ala.Crim.App. 1978); Cordle v. State, 53 Ala. App. 148, 156, 298 So.2d 77, cert. denied, 292 Ala. 717, 298 So.2d 85 (1974). '[E]xpert witnesses, even physicians, cannot testify to the opinions of others in giving their opinions.' Carroll v. State, 370 So.2d 749, 758 (Ala.Crim.App.), cert. denied, 370 So.2d 761
(Ala. 1979).
 " 'The traditional rule in this country has been that an expert, in giving his opinion, cannot rely upon the opinion of others. The basis for this rule of exclusion has been that such testimony is based upon what others have said, and, consequently, constitutes hearsay. In light of this rule a physican-witness' testimony to his opinion with respect to the condition of his patient may not be supported by testimony by such witness that certain opinions or reports . . . concerning the patient had been made to him by other physicians.' "
Brackin v. State, 417 So.2d 602, 606 (Ala.Crim.App. 1982), quoting C. Gamble, McElroy's Alabama Evidence, § 110.01(3) (3d ed. 1977). See Chinevere v. Cullman County, 503 So.2d 841, 843
(Ala. 1987).
In Nash v. Cosby, 574 So.2d 700 (Ala. 1990), we modified that traditional rule. In that case, we adopted a standard which allows a medical expert to give opinion testimony based in part on the opinions of others when those other opinions are found in medical records admitted into evidence. Nevertheless, our holding in Nash does not control the result of this case.
 "There is a trend toward the admission of an expert's opinion based partly on *Page 129 
medical, psychological, or hospital reports not in evidence if the reports are of a type customarily relied upon by the expert in the practice of his profession. Annot., 55 A.L.R.3d 551 (1974). However, this trend has not been followed by the courts of this state. This is in accord with the general and traditional rule. [See] 31 Am.Jur.2d Expert and Opinion Evidence, Section 86 (1967)."
Brackin, supra at 606. (Citations omitted.) See Salotti v.Seaboard Coast Line R.R., 293 Ala. 1, 299 So.2d 695 (1974). See, also, C. Gamble, McElroy's Alabama Evidence, § 130.01 (3d ed. 1977).
Thus, in Nash we modified the Court of Criminal Appeals' holding in Brackin as it relates to the testimony of medical experts based on the opinions of others; but Nash has not changed the traditional rule followed in Alabama that the information upon which the expert relies must be in evidence.[1]
There are recognized exceptions to this rule. We have allowed experts to testify regarding value, when that testimony was based in part on hearsay evidence. See Sidwell v. Wooten,473 So.2d 1036 (Ala. 1985); Southern Electric Generating Co. v.Howard, 275 Ala. 498, 156 So.2d 359 (1963); Blount County v.Campbell, 268 Ala. 548, 109 So.2d 678 (1959); and Alabama PowerCo. v. Berry, 222 Ala. 20, 130 So. 541 (1930). The Court of Criminal Appeals has also recognized an exception where the expert is a deputy coroner who uses a toxicologist's autopsy report as part of the basis for his testimony. See Jackson v.State, 412 So.2d 302 (Ala.Crim.App. 1982); Woodard v. State,401 So.2d 300 (Ala.Crim.App. 1981).
 " '[Nevertheless, our] cases are consistent in holding that an expert witness may give opinion testimony based upon either facts of which he has personal knowledge or facts which are assumed in a hypothetical question. . . . In either event, "the facts known to the expert or hypothe[sized] must be facts in evidence." Hagler v. Gilliland, 292 Ala. 262, 265, 292 So.2d 647
(1974).'
". . . .
 " 'An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, based upon facts in evidence. In either case, the facts
known to the expert or [hypothesized] must be facts in evidence. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16, 18 (1931).' "
Welch v. Houston County Hosp. Bd., 502 So.2d 340, 345
(Ala. 1987), quoting Thompson v. Jarrell, 460 So.2d 148, 150
(Ala. 1984). (Emphasis added in Welch.) See, also, Romine v.Medicenters of America, Inc., 476 So.2d 51 (Ala. 1985). There is no reversible error if the facts upon which the opinion is based are admitted into evidence after the expert has testified. Crawford v. Hall, 531 So.2d 874 (Ala. 1988).
In this case, the reports and records upon which Dr. McClaren testified were not in evidence at the time he testified, nor were they subsequently admitted. Although a doctor may testify to statements made by a patient regarding that patient's medical history, if those statements were made during and for the purpose of treatment, Stewart v. Lowery, 484 So.2d 1055
(Ala. 1985), we cannot assume that the records upon which Dr. McClaren relied did not contain more than a medical history related by Wesley to hospital personnel. Such is simply not the nature of the content of medical records. Thus, his testimony, based partly on those facts not in evidence, *Page 130 
is inadmissible. See C. Gamble McElroy's Alabama Evidence, § 110.01 et seq. "The source of our decision on this issue is the principle that insanity cannot be proven by hearsay evidence."Brackin, supra, at 606.
We note that other jurisdictions and the federal courts allow expert testimony on the issue of sanity based in part on hearsay so long as that hearsay is customarily relied on by experts in the field. See generally Annot., 55 A.L.R.3d 551 (1974); Annot., 175 A.L.R. 274 (1948); Fed.R.Evid. 703. Be that as it may, without legislation authorizing this, we will not change the traditional rule followed in Alabama,[2] particularly in a case in which a man has been sentenced to death.
The Court of Criminal Appeals relies on Brown MechanicalContractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala. 1983). We do not think that case is relevant. In BrownMechanical Contractors, we did not reverse because of the trial court's admitting into evidence, over objection, a letter that served as a basis for an expert's opinion as to why one possible cause of a fire was not the cause of the fire. In a footnote in Brown, we wrote, "We do not suggest, however, that hearsay is admissible whenever it is assertedly offered to showthe basis of an expert opinion." 431 So.2d at 944. (Emphasis supplied.) In Brown, that letter, which contained hearsay, was admitted into evidence, and the expert was cross-examined on that letter.
In the present case, the police reports and medical records that contained hearsay evidence and upon which Dr. McClaren was asked to base his opinion were not offered or admitted into evidence. Dr. McClaren's testimony was objected to because he was asked to base his opinion upon those records that were not in evidence.
We hold that the trial court erred to reversal in allowing Dr. McClaren's testimony. We reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES and ADAMS, JJ., concur.
MADDOX and STEAGALL, JJ., concur specially.
[1] In Nash we recognized that "the recent trend has been toward allowing expert testimony that is based upon medical or hospital or psychological records, even in some cases wherethose records are not in evidence." 574 So.2d at 704. (Emphasis added.) There, the records upon which the expert partially based his testimony were in evidence. Our recognition of the recent trend, however, is not to be taken as an adoption of that trend, especially considering that the facts in Nash would not support our doing so. Accordingly, the phrase "even in some cases where those [medical] records are not in evidence" should be given no significance insofar as the law of this state is concerned.
[2] New York courts followed the traditional rule until N YCiv.Prac. L. R. § 4515 (McKinney 1963) provided an exception. Section 4515 allowed the testimony of experts if that testimony was based upon material "of a kind accepted in the profession as reliable in forming a professional opinion." We have the same concern as was voiced by the author of the "Supplementary Practice Commentaries" to that section:
 "Most experts, particularly psychiatrists, will state that they rely upon every piece of relevant evidence they can lay their hands on. Thus, one wonders whether the exception may swallow the rule.
 ". . . [R]ule 4515 seems to create almost as many problems as it solves."