COBB, Judge
(concurring in the result).
In its unpublished memorandum, the majority affirms the trial court’s decision to deny E.J.M.’s request for funds to hire a mental, health expert to testify on his behalf at the hearing on the motion to transfer the case from the juvenile court to the circuit court. The majority relies on the following rationale and holding in Ex parte H.P.W., 628 So.2d 514, 516 (Ala.1993):
‘We first address the juvenile’s claim that the trial court erred in denying his motion asking the court to order the State to pay the expenses for a mental evaluation. He argues that the denial of this motion violated his due process rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We disagree. In Ake, the Supreme Court held that the Fourteenth Amendment’s guarantee of fundamental fairness required that an indigent defendant in a criminal proceeding be provided the means to build an effective defense, 470 U.S. at 76-77, 105 S.Ct. at 1092-93, but this case involved a transfer hearing and this Court has specifically stated that ‘a transfer hearing is not a hearing to adjudicate the guilt or innocence of the child accused of a crime but is, instead, a probable cause hearing to determine whether the child should be transferred out of the juvenile court for criminal prosecution as an adult.’ Brown v. State, 353 So.2d 1384, 1387-88 (Ala.1977). Consequently, the procedural requirements of a trial do not ordinarily apply to a transfer hearing. See Gulledge v. State, 419 So.2d 219, 220 (Ala.1982) (holding that the strict rules of evidence do not apply to a transfer hearing because it is a probable cause hearing rather than a criminal prosecution); Cruse v. State, 489 So.2d 694, 697 (Ala. *1078 Cr.App.1986) (holding that a transfer hearing is not a ‘criminal prosecution’ within the meaning of the Sixth Amendment’s guaranty of the right to a speedy trial). We hold, therefore, that because a transfer hearing is a probable cause hearing rather than a criminal prosecution, which would place a person’s liberty at stake, the denial of the juvenile’s motion to require the State to pay expenses to obtain a psychological expert did not violate his due process rights.”
I write specially to note that I concur with the result reached in the unpublished memorandum only because of the binding precedent established in Ex parte H.P.W., 628 So.2d 514 (Ala.1993). Having conducted transfer hearings as a former juvenile judge, I am convinced that the better view is stated in Justice Kennedy’s learned dissent in H.P.W.:
“The majority of the Court holds that H.P.W.’s due process rights under the Fourteenth Amendment were not violated by the juvenile court’s denial of his motion asking that the State pay the expenses of a mental evaluation. I disagree.
“In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held -that a state must take certain steps to assure that an indigent criminal defendant has a fair opportunity to present his' defense, including providing him with a psychiatrist’s assistance if the defendant shows that his sanity at the time of the offense is an issue. In addition, in that case the Supreme Court held that the defendant was entitled to a psychiatrist’s assistance at his sentencing proceeding in order to present an expert’s opposing view as to his future dangerousness, because at the sentencing proceeding the State had presented evidence of the defendant’s likelihood of future dangerousness. The Supreme Court held that without a psychiatrist’s assistance, the defendant could not present a well-informed expert’s opposing view as to his likelihood of future dangerousness.
“The case at bar involves an indigent juvenile who was transferred to the circuit court to stand trial as an adult. The Court of Criminal Appeals reversed the transfer order on a holding that the juvenile court had abused its discretion in denying a motion for a continuance and a motion for a psychiatric evaluation after evidence was presented that the juvenile had a long history of mental problems and drug abuse. H.P.W. v. State, 591 So.2d 141 (Ala.Cr.App.1991). On remand, the juvenile court held a second transfer hearing; it reviewed, among other things, evidence from a State psychiatrist, and it found that H.P.W. was competent to stand trial as an adult.
“Recently, this Court stated that ‘a transfer hearing is a “critically important” proceeding in juvenile criminal procedure,’ citing Kent v. United States, 383 U.S. 541, 560, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966), and that ‘[a] transfer hearing “must measure up to the essentials of due process and fair treatment,” ’ quoting Kent, 383 U.S. at 562, 86 S.Ct. at 1057. Ex parte W.T.K., 586 So.2d 850, 851 (Ala.1991).
“In Ex parte W.T.K., the juvenile argued that his arrest had been unlawful and that the subsequent confession was therefore inadmissible at the transfer hearing as the fruit of an unlawful arrest. This Court reaffirmed its prior position that a transfer hearing is not designed to determine guilt or innocence of the juvenile but is instead a probable cause hearing to determine whether the juvenile should be transferred out of the juvenile court for criminal prosecution *1079 as an adult. However, the Court held that a juvenile’s Fourth Amendment rights must be protected at a transfer hearing.
“Similarly, in regard to the instant case, I feel that certain protections must be afforded a juvenile, including providing him with a psychiatrist’s assistance at a transfer hearing when it has clearly been shown that his mental state is at issue. As previously noted, there was evidence presented that H.P.W. had a long history of mental problems and drug abuse. (R. 52,102-14).
“It is particularly important that courts protect the constitutional rights of juveniles at transfer hearings. To transfer a juvenile and try him as an adult without protecting his rights to due process of law is impermissible.
“Section 12-15-34(e), Ala.Code 1975, provides that if there are grounds to believe that a juvenile is committable to an institution, the court can order a mental examination pursuant to § 12-15-70. As was stated in Ake, ‘[p]sychia-try is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness .... Perhaps because there is often no single, accurate psychiatric conclusion on legal insanity in a given case, juries remain the primary factfinders on this issue, and they must resolve differences in opinion within the psychiatric profession on the basis of the evidence offered by each party.’ 470 U.S. at 81, 105 S.Ct. at 1095.
“At a transfer hearing it is the judge who determines whether a juvenile is competent to stand trial as an adult; nevertheless, before the judge makes this determination, the juvenile should have the opportunity to present opposing expert evidence as to his mental state. If the juvenile is indigent, as H.P.W. is in this case, the State should be required to pay the expense of obtaining a psychiatrist’s assistance.
628 So.2d at 517-18 (Kennedy, J., dissenting).
I also note that we addressed a similar issue in L.L.J. v. State, 746 So.2d 1052 (Ala.Crim.App.1999). In L.L.J., the juvenile, who was not indigent, had hired an expert and asked the trial court for permission to allow her expert to testify. The trial court declined. In reversing the trial court’s decision, we reasoned and held:
“The juvenile court’s ruling that it was ‘not going to consider testimony from somebody that’s not involved on this case’ was contrary to established law. (R. 221.) It is well settled that ‘a medical expert [may] give opinion testimony based in part on the opinions of others when those other opinions are found in medical records admitted into evidence.’ Ex parte Wesley, 575 So.2d 127, 128 (Ala.1990). Furthermore, ‘[t]here is no reversible error if the facts upon which the opinion is based are admitted into evidence after the expert has testified.’ Id. at 129.
“A transfer hearing is a ‘critically important’ proceeding” in juvenile criminal procedure.’ Ex parte W.T.K., 586 So.2d 850, 851 (Ala.1991), quoting Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Although transfer hearings are not adjudications of guilt, but, instead, are probable cause hearings to determine whether a juvenile should be transferred for prosecution as an adult, and therefore, are not always afforded the full procedural safeguards of a trial, they must still ‘ “measure up to the essentials of due process and fair treatment.” ’ Id., quoting Kent, supra.
“ ‘It is particularly important to protect a juvenile’s constitutional *1080 rights at a transfer hearing. To transfer a juvenile and subject him to adult treatment without protecting his constitutional rights is impermissible.’
“586 So.2d at 853.
“ ‘Few rights are more fundamental than that of an accused to present witnesses in his own defense.’ Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). ‘The rights to confront and cross-examine witnesses and to call witnesses in one’s own behalf have long been recognized as essential to due process.’ Id. at 294, 93 S.Ct. 1038. Furthermore, ‘[i]t is the manifest duty of the courts to vindicate [the Fifth Amendment guarantee that no person shall be deprived of liberty without due process of law], and to accomplish that it is essential that all relevant and admissible evidence be produced.’ Boykins v. Wainwright, 737 F.2d 1539, 1544 (11th Cir.1984).
“We conclude that Dr. Lyman’s testimony would have been relevant to at least one of the six factors that a juvenile court must consider when determining whether to transfer a juvenile for prosecution as an adult, see § 12-15-34, Ala.Code 1975.[1] Dr. Lyman could have testified concerning the treatment facilities and options available for the appellant in the juvenile system, given her diagnosed condition.[2] . This testimony would have been directly relevant to the issue whether the best interests of the appellant would be served by keeping her in the juvenile system, or transferring her for adult prosecution. In addition, Dr. Lyman’s testimony would have been relevant for purposes of rebutting the state’s expert testimony that the appellant’s conduct disorder was most likely not treatable. In essence, Dr. Lyman would have testified that the appellant was ‘committable to an institution’ for treatment and that she could be ‘properly disciplined’ and treated in the juvenile system. Such evidence was highly relevant to the transfer hearing, and thus should have been admitted.”
746 So.2d at 1062-63. I recognize that the case at hand differs from L.L.J. in that L.L.J. had hired her own expert and the issue in that case was couched in terms of L.L.J.’s right to present witnesses on her own behalf, rather than in terms of the right to be allotted funds to hire an expert. Nonetheless, the underlying issue is the same: to what extent is a juvenile entitled to procedural due process at the very critical transfer hearing?
*1081 The case at hand aptly illustrates the need for the Alabama Supreme Court to reconsider its reasoning in H.P.W. E.J.M., an indigent juvenile, “had a chaotic and difficult childhood” and had previously attempted suicide four times, the first attempt occurring when he was six years old. (R. 65.) He was diagnosed with depressive disorder, oppositional defiant disorder, conduct disorder, and polysubstance abuse. When E.J.M. had been on probation as the result of a prior adjudication of delinquency, his probation officer ordered that he continue to receive mental health counseling; the probation officer admitted that she was concerned for E.J.M.’s mental health and that she thought he needed help. The juvenile court also had prior knowledge that E.J.M.’s mental health was questionable; that court had, on two prior occasions, ordered that E.J.M. be transported for mental health treatment while he was spending time in the detention center.
Because mental health is one of the six factors the juvenile court is to consider before transferring a juvenile to the circuit court to be treated as an adult, see 12-15-34(d), Ala.Code 1975, quoted in note 1, supra, certainly it is imperative that the juvenile be able to present witnesses in his or her own defense at such a critical stage. I fail to see the difference between whether the juvenile is unable to do so because the trial court does not allow the funds to hire an expert, see H.P.W., supra, or whether the trial court does not allow an existing expert to testify, see L.L.J., supra. In both L.L.J. and H.P.W., the trial court denied the juveniles the use of expert testimony regarding their mental health; one of those denials constituted the denial of procedural due process and the other did not. It would seem appropriate that, in order for the majority to arrive at its result, a result albeit supported by an Alabama Supreme Court case, L.L.J. should be better distinguished from H.P.W., or overruled, because there appears to be some conflict between the two cases.
Finally, although it is true that a mental health evaluation can be performed after the juvenile has been transferred to the circuit court to be tried as an adult, the juvenile nonetheless loses the opportunity to avail him or herself of the added protections and considerations of the juvenile court system. That is, although later mental evaluation as an adult affords some semblance of procedural due process, it is, in effect, too little, too late.
Therefore, I encourage the Alabama Supreme Court to reconsider its reasoning in H.P.W. and consider Justice Kennedy’s admonition that we must protect the constitutional rights of juveniles at transfer hearings, because they are as vulnerable at that stage of the process as at any other, if not more so.

. Section 12-15~34(d), Ala.Code 1975, provides:
"Evidence of the following and other relevant factors shall be considered in determining whether the motion [to transfer] shall be granted:
"(1) The nature of the present alleged offense.
"(2) The extent and nature of the prior delinquency record of the child.
"(3) The nature of past treatment efforts and the nature of the response of the child to the efforts.
"(4) Demeanor.
"(5) The extent and nature of the physical and mental maturity of the child.
"(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline.”
(Emphasis added.) Additionally, § 12 — 15— 34(c), Ala.Code 1975, provides that, "[w]hen there are grounds to believe that the child is committable to an institution or agency for the mentally retarded or mentally ill, the court shall proceed pursuant to Section 12-15-70.” Section 12-15-70, Ala.Code 1975, provides for the examination and care of a mentally ill child within the juvenile court.

. L.L.J. was diagnosed with conduct disorder with adolescent onset, a nonspecific learning disorder, and emotional problems.