On Application for Rehearing
 

 PARKER, Justice.
 

 This Court’s opinion of January 4, 2008, is withdrawn, and the following is substituted therefor.
 

 Donald Deardorff petitions for a writ of certiorari to review the decision of the Court of Criminal Appeals affirming his convictions for capital murder and his sentence of death. We affirm. The facts pertinent to our review are as follows:
 

 On September 22, 1999, Donald Dear-dorff, armed with a stolen handgun and accompanied by an associate, Millard Peacock, broke into the house of Ted Turner, a local businessman in Mobile, with whom Deardorff had had some dealings that had resulted in Turner’s pursuing legal action against Deardorff. They awaited Turner’s return to the house, at which time they subdued him at gunpoint. They kept Turner in a closet with his hands bound with duct tape. Over the course of the next 24 hours, Deardorff forced Turner to write 5 checks to Peacock for a total of $21,750. Peacock cashed the checks at a bank and gave the money to Deardorff. On September 24, 1999, Deardorff and Peacock drove Turner, whose hands and mouth were taped with duct tape and whose head was covered with a pillowcase that was taped in place, to the end of a logging road, at a point at which the road was blocked by a gate. There, they walked Turner, who had recently had knee surgery, to the end of the road and shot him four times in the head, killing him. Turner’s body remained undiscovered until July 2001. Deardorff was arrested in October 1999 for possessing a firearm without a permit; he was subsequently convicted on several capital-murder and other charges and was sentenced to death.
 

 Deardorff was charged in a 23-count indictment with capital murder and related offenses surrounding Turner’s death. A jury convicted him of three counts of capital murder, seven counts of theft, and one count of receiving stolen property. After a penalty-phase hearing, a jury, by a 10-2 vote, recommended the imposition of the death penalty. After a separate hearing, the trial court followed the jury’s recommendation and sentenced Deardorff to death. On June 25, 2004, the Court of Criminal Appeals affirmed the capital-murder convictions and the sentence of death but ordered the seven theft convictions vacated because they violated Deardorffs
 
 *1238
 
 double-jeopardy rights.
 
 Deardorff v. State,
 
 6 So.3d 1205 (Ala.Crim.App.2004). The Court of Criminal Appeals remanded the case to the trial court for the limited purpose of vacating the seven theft convictions and the associated sentences. On September 17, 2004, the Court of Criminal Appeals, on return to remand, affirmed the trial court’s action in vacating the theft convictions, without an opinion. Deardorff petitioned this Court for a writ of certiora-ri seeking review of 21 claimed conflicts and/or errors in the Court of Criminal Appeals’ opinion. We granted certiorari on four grounds, including three evidentia-ry issues and Deardorffs claim that the trial court improperly found as an aggravating circumstance that the offense was “especially heinous, atrocious, or cruel,” when compared to other capital offenses. Because no objection was made at trial on the evidentiary issues, Deardorff has petitioned this Court to conduct a plain-error review of those issues under Rule 39(a)(2)(A), Ala. R.App. P.
 

 Legal Analysis
 

 I. Was the offense “especially heinous, atrocious, or cruel,” when compared to other capital offenses?
 

 Deardorff asserts that the Court of Criminal Appeals’ holding that “ ‘[t]he trial court’s determination that the evidence established the § 13A-5-49(8) aggravating circumstance, that the murder was especially heinous, atrocious, or cruel, is fully supported by the record’ ” conflicts with both the record in this case and this Court’s decision in
 
 Ex parte Clark,
 
 728 So.2d 1126 (Ala.1998). Deardorff's petition at 24 (quoting
 
 Deardorff,
 
 6 So.3d at 1228).
 

 The trial court ruled that Deardorffs execution-style murder of Turner fell within the meaning of the “especially heinous, atrocious, or cruel” aggravating circumstance; the Court of Criminal Appeals determined that there was sufficient evidence to support a finding that that aggravating circumstance existed, stating:
 

 “From the moment Deardorff threatened Turner with ‘blowing his brains out’ to the moment he was forced to kneel, bound and with his head covered with a pillowcase secured with duct tape, Turner’s fear for his life was undoubtedly great. ... The terror he experienced must have escalated tremendously when his mouth was taped and his hands were bound as he was taken away from his home, driven away in his own car. When the pillowcase was taped and he could no longer see where he was being taken, he had to know that his death was imminent.”
 

 Deardorff,
 
 6 So.3d at 1228.
 

 Deardorff disputes whether Turner was aware of his impending death. However, the evidence introduced at trial shows that at one point while Turner was being held captive by Deardorff and Peacock, Dear-dorff drew his gun, pointed it at Turner, and told him to be quiet and say nothing or Deardorff would “blow his brains out.” Turner pleaded with Deardorff, telling him that he would give him whatever he wanted so long as Deardorff did not kill him. Two months before his death, Turner had made a notation on his will, which had been executed in January 1999, reaffirming its validity “just in case Don Deardorff is really crazy.” Thus, there is sufficient evidence indicating that Turner was aware of his impending death through the threat, the fears, the pleas, the final abduction in the car, and the forced walk down a dirt road.
 

 The Court of Criminal Appeals repeatedly asserted in its opinion that Turner was forced to kneel on the ground before he was shot; however, the only
 
 *1239
 
 eyewitness to the killing, Peacock, testified that he was not aware that Deardorff was going to shoot Turner, and he testified that “[Deardorff] walked [Turner] a few more feet and he shot him.” Deardorffs brief at 83 and 85. The State concedes that evidence in support of those statements in the Court of Criminal Appeals’ opinion that Turner was “forced to kneel” is lacking:
 

 “Deardorff makes much of the statements in the Court of Criminal Appeals’ opinion that Turner was ‘forced to kneel’ before he died. This finding was not made by the trial court, nor did the State argue [that] this was the case. The evidence is silent on this question. But the finding is not necessary to support the [aggravating circumstance that the offense was especially heinous, atrocious, or cruel].... [Standing or kneeling, Turner had every reason to fear that his death was imminent and unpreventable. The trial court properly found that the murder of Ted Turner was ‘especially heinous, atrocious, or cruel.’ No error, much less plain error, occurred.”
 

 State’s brief at 54-55. The absence of evidence indicating that Turner was forced to kneel, however, does not negate the impact of the evidence previously cited showing Turner’s fear and his knowledge of his impending death.
 

 This Court discussed the meaning of the words “especially heinous, atrocious or cruel,” as used in § 13A-5-49(8), Ala.Code 1975, in
 
 Ex parte Clark
 
 as follows:
 

 “We cannot depart from the established meaning of the words enacted by the Legislature — ‘especially heinous, atrocious or cruel’ — and apply those words to include murders that do not involve the infliction of torture on the victim. Such a departure would abandon the essential characteristic that made our previous applications of § 13A-5-49(8) compatible with the Eighth Amendment. We are bound to retain the interpretation of ‘especially heinous, atrocious or cruel’ that has provided a consistent and principled distinction between those murders for which the death penalty sentence is appropriate and those for which it is not. See
 
 [Maynard v.] Cartwright,
 
 486 U.S. [356] at 363, 108 S.Ct. 1853 [ (1988) ];
 
 Godfrey [v. Georgia],
 
 446 U.S. [420] at 433, 100 S.Ct. 1759 [ (1980) ].”
 

 728 So.2d at 1140-41. This Court in
 
 Ex parte Clark
 
 refused to expand the definition of “especially heinous, atrocious or cruel” to include murder not involving torture:
 

 “The State urges us to hold that the ‘execution-style’ murder in this case, for which the record does not reflect torture of the victim, is nonetheless ‘especially heinous, atrocious or cruel.’ Such an expansion of the aggravating circumstance set out in § 13A-5-49(8) to encompass a murder not involving torture, merely because the State labels the murder an ‘execution-style’ slaying would abandon the very interpretation that the Eleventh Circuit held critical to the constitutional application of that aggravating circumstance. Indeed, the Supreme Court of the United States has held that a state supreme court’s failure to apply its previously recognized limiting construction of an aggravating circumstance, which required a finding of torture or aggravated battery of the victim, rendered the application of the aggravating circumstance unconstitutional.
 
 Godfrey [v. Georgia],
 
 446 U.S. [420,] 429, 432, 100 S.Ct. 1759 [ (1980) ].”
 

 728 So.2d at 1140.
 

 When considering whether a particular capital offense is especially heinous, atrocious, or cruel, the Court of Criminal
 
 *1240
 
 Appeals adheres to the standard set out in
 
 Ex parte Kyzer,
 
 399 So.2d 330, 334 (Ala.1981), namely, the particular offense must be one of those “ ‘conscienceless or pitiless homicides which are unnecessarily torturous to the victim.’ ”
 
 Duke v. State,
 
 889 So.2d 1, 36 (Ala.Crim.App.2002).
 

 “One factor this Court has considered particularly indicative that a murder is ‘especially heinous, atrocious or cruel’ is the infliction of psychological torture. Psychological torture can be inflicted where the victim is in intense fear and is aware of, but helpless to prevent, impending death. Such torture ‘must have been present for an appreciable lapse of time, sufficient enough to cause prolonged or appreciable suffering.’
 
 Norris v. State,
 
 793 So.2d 847, 861 (Ala.Crim.App.1999).”
 

 Ex parte Key,
 
 891 So.2d 384, 390 (Ala.2004). See also
 
 Ex parte Rieber,
 
 663 So.2d 999, 1003 (Ala.1995).
 

 Deardorff has not shown any merit in his claim that the aggravating circumstance that the offense was especially heinous, atrocious, or cruel does not exist here. Being threatened with death, being held in captivity and confined in a closet, being transported by car while his head was hooded and his hands taped, being forced to walk down the dirt road with a hood over his head and his hands taped, and the events immediately preceding Turner’s killing constitute psychological torture so as to meet the standard for a murder that is “especially heinous, atrocious, or cruel.” There was no plain error in the trial court’s finding that Turner’s murder was especially heinous, atrocious, of cruel, and Deardorff is not entitled to any relief on this claim.
 

 II. Did the trial court err in admitting evidence of Deardorffs prior bad acts?
 

 Deardorff specifically challenged certain testimony that he asserts constitutes the improper admission of evidence of prior bad acts: testimony that Deardorff had killed several people before Turner’s murder, that he had illegally possessed a handgun, and that he had been incarcerated in the penitentiary before Turner’s murder.
 

 Because no objection was made to this testimony at trial, Deardorff has petitioned this Court for plain-error review of this issue, under Rule 39(a)(2)(A), Ala. R.App. P.
 

 “As this Court stated in
 
 Hall v. State,
 
 820 So.2d 113, 121-22 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001), regarding our standard of review when conducting a plain-error analysis:
 

 “ ‘The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the United States Supreme Court stated in
 
 United States v. Young,
 
 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is “particulai'ly egregious” and if it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” See
 
 Ex parte Price,
 
 725 So.2d 1063 (Ala.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999);
 
 Burgess v. State,
 
 723 So.2d 742 (Ala.Cr.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999);
 
 Johnson v. State,
 
 620 So.2d 679, 701 (Ala.Cr.App.1992), rev’d on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).’ ”
 

 Irvin v. State,
 
 940 So.2d 331, 341 (Ala.Crim.App.2005).
 

 
 *1241
 
 As to the testimony that Deardorff had previously killed several other people, we note that defense counsel, during the cross-examination of Walter Fambro, a convict in whom Deardorff had confided while they were both incarcerated, admitted into evidence a letter from Fambro to federal authorities detailing conversations Fambro alleged he had had with both Peacock and Deardorff about Turner’s murder. On redirect examination, the prosecutor questioned Fambro concerning that letter. When asked to read a page of the letter, Fambro stated that Deardorff had mentioned to him that he had committed other murders. The now complained-of testimony by Fambro was based entirely on the letter admitted into evidence as a defense exhibit. State’s brief at 30.
 

 Likewise, as to the testimony that Dear-dorff had previously been incarcerated in a penitentiary, Alabama Bureau of Investigation Agent Andrew Huggins read from a report that had been admitted into evidence by the defense for impeachment purposes; the report stated that Deardorff told police when he was arrested for Turner’s murder that he was on probation for another offense. Deardorff now complains that this testimony was admitted in error, when this information was in fact placed in evidence by defense counsel.
 

 The scope of cross-examination in Alabama is quite broad. Rule 611(b), Ala. R. Evid. This means that any question may be asked on cross-examination that is relevant either to any substantive issue in the case or to the witness’s credibility. See Rule 611(b), Ala. R. Evid., Advisory Committee’s Notes. The trial court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. Rule 611(a), Ala R. Evid. Deardorff challenges both the testimony that he had previously killed several people and that he had previously been incarcerated, and he asserts that such testimony constitutes the improper admission of evidence of prior bad acts under Rule 404(b), Ala. R. Evid. The testimony, however, was not offered to introduce Dear-dorff s prior bad acts and to show that he acted in conformity with those prior bad acts, but was elicited on redirect examination by the State regarding documents that had already been offered into evidence by the defense on cross-examination.
 

 “[O]n redirect examination, the object is to answer any matters brought out on the cross-examination of the witness by his adversary. Whether, on redirect examination, a calling party may elicit from a witness matters which do not rebut that which was brought out on cross-examination is within the discretion of the trial court.”
 

 Charles Gamble,
 
 McElroy’s Alabama Evidence
 
 § 439.01(1) (5th ed.1996) (footnote omitted). See
 
 Sistrunk v. State,
 
 596 So.2d 644, 647 (Ala.Crim.App.1992).
 

 “It does not seem consonant with sound principles of judicial administration to allow a party to introduce evidence and assert on appeal that the trial court erred to reversal by admitting that evidence. In 32A C.J.S.
 
 Evidence
 
 § 1040(1) (1964) the appropriate rule is stated:
 

 “ ‘[A] party who has introduced certain evidence cannot subsequently object that ... it should not be given such consideration as its natural probative value entitled it to, or that it is insufficient to sustain a judgment based thereon.’ (Footnotes omitted.)”
 

 Peterson v. Jefferson County,
 
 372 So.2d 839, 842 (Ala.1979).
 

 “ ‘Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.’
 
 Phillips v. State,
 
 527 So.2d 154, 156 (Ala.1988). Although evi
 
 *1242
 
 dence that he had been convicted of a prior crime would not ordinarily have been admissible at trial, the appellant cannot claim that it was error to receive testimony concerning his arrest for a parole violation when he injected the issue into the trial.”
 

 Franklin v. State,
 
 644 So.2d 35, 38 (Ala.Crim.App.1994).
 

 As to the testimony that Deardorff was in illegal possession of a gun, testimony was elicited that Deardorff had told Peacock that his grandmother’s house had been broken into and that the gun was reported stolen. However, the testimony indicated that Deardorff later found the gun but did not tell anyone it had been recovered; instead, he kept it. Deardorff was questioned as a suspect in Turner’s disappearance on October 1, 1999, when the car in which he was riding was stopped by the police. A gun was found during a search of the car, along with the proceeds from the checks Deardorff had forced Turner to write. In a tape-recorded interview, Deardorff admitted that he had lied about having the gun because he was afraid of going back to the penitentiary. Deardorff was arrested on a charge of possessing a firearm without a permit; the offense he expressed concern about was possession of a firearm by a convicted felon.
 

 “ ‘[T]he State is not permitted to give in evidence other crimes alleged to have been committed by the defendant unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged.’ ”
 

 Ex parte Casey,
 
 889 So.2d 615, 618 (Ala.2004) (quoting
 
 Garner v. State,
 
 269 Ala. 531, 533, 114 So.2d 385, 386 (1959) (emphasis omitted)).
 

 Deardorff challenges the admission of this testimony — two concerning pri- or bad acts and one concerning the source of a gun in Deardorffs possession, also involving a prior bad act. The first two were derived from evidence admitted by Deardorff, and, under the doctrine of invited error, he may not challenge evidence he has presented to the court. The testimony regarding his retention of a gun after it was reported stolen from his grandmother’s house was related to one of the offenses actually charged in the indictment, receiving stolen property, in that it was intended to establish the source of the gun in his possession. His challenge on appeal to the evidence has no merit, and there was no error in admitting the testimony at trial.
 

 III. Did the trial court err in allowing the State’s expert witness to testify to facts not in evidence?
 

 Deardorff contends that the testimony of George Glaser, an agent of the Federal Bureau of Investigation who testified as an expert for the State, was based on hearsay and on collateral sources that were not admitted into evidence.
 

 Rule 703, Ala. R. Evid., requires that the facts or data relied upon by the expert in testifying and procured by the expert other than by firsthand knowledge generally must be admitted into evidence. See Charles Gamble,
 
 McElroy’s Alabama Evidence
 
 § 127.02(5) (5th. ed.1996). It is clear that under Alabama law the State must introduce into evidence the information upon which an expert relies. See
 
 Ex parte Wesley,
 
 575 So.2d 127, 129 (Ala.1990) (holding that reversible error occurred where expert, in giving opinion on defendant’s mental condition, based opinion in
 
 *1243
 
 part on police reports and medical records that were not admitted into evidence).
 

 “Alabama has followed the traditional rule.
 
 Carroll v. State,
 
 370 So.2d 749 (Ala.Cr.App.), cert. denied, 870 So.2d 761 (Ala.1979);
 
 Hurst v. State,
 
 356 So.2d 1224 (Ala.Cr.App.1978);
 
 Cordle v. State,
 
 53 Ala.App. 148, 298 So.2d 77, cert. denied, 292 Ala. 717, 298 So.2d 85 (1974), cert. denied, 419 U.S. 1033, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974). However, in
 
 Nash v. Cosby,
 
 574 So.2d 700 (Ala.1990), the Alabama Supreme Court modified the traditional rule by allowing a medical expert to give opinion testimony based in part on the opinions of others when those other opinions are found in the medical records admitted into evidence. However, as the Alabama Supreme Court noted in
 
 Ex parte Wesley[
 
 575 So.2d 127 (Ala.1990) ],
 
 Nash
 
 did not change ‘the traditional rule followed in Alabama that the information upon which the expert relies must be in evidence,’ 575 So.2d at 129 (footnote omitted). In
 
 Ex parte Wesley,
 
 the expert, in giving his opinion on the mental condition of the defendant in that case, based his opinion in part on police reports and medical records that were not in evidence. Following the traditional rule, as modified, the
 
 Wesley
 
 court found the expert’s testimony inadmissible. More recently, in W.S.
 
 v. T.W.,
 
 585 So.2d 26 (Ala.1991), Justice Houston, the author of the opinion in
 
 Ex parte Wesley,
 
 in an effort to clarify the rule in Alabama, stated in a concurring opinion, as follows:
 

 “ ‘It is my understanding that an expert witness may give opinion testimony based upon facts of which he has personal knowledge; based upon opinions of others, if these are opinions of a type customarily relied upon by the expert in the practice of his profession; or based upon facts that are assumed in a hypothetical question. In any event, the facts known to the expert, the opinions of others of a type customarily relied upon by the expert in the practice of his profession, and the hypothesized facts must all be facts in evidence.’
 

 “585 So.2d at 29.”
 

 Madison v. State,
 
 620 So.2d 62, 68 (Ala.Crim.App.1992).
 

 Deardorff asserts that the prosecution relied on the testimony of Agent Glaser, using information obtained from two computers — one belonging to Turner and one belonging to Dawn Dunaway, Peacock’s girlfriend — to place Deardorff in a particular place and time to prove that Deardorff, and not Peacock, the only witness against him, was the killer. Agent Glaser analyzed the computers, searching for information provided by Tom Montgomery, an agent with the Federal Bureau of Investigation. Agent Glaser testified that Agent Montgomery gave him a list of words, all of which he found on the hard drives of the computers he examined. Agent Glaser “was not sure exactly how [Agent Montgomery] derived that information during the investigation, but when I got [the words] they were there.”
 

 The State contends that all the facts upon which Agent Glaser based his testimony were within his direct knowledge. State’s brief at 35. Deardorff states:
 

 “Agent Glaser testified that his analysis of the computer hard drives was based on information provided to him by a third party, Agent Montgomery. ... In describing his methodology, Agent Glaser testified that [Agent] Montgomery gave him some information, including a list of words or part numbers [for automobile parts] ... and he was ‘not sure
 
 *1244
 
 exactly’ how Agent Montgomery derived that information.”
 

 Deardorff's reply brief at 15.
 

 However, before Agent Glaser testified, Agent Montgomery had already testified, and he presented substantial evidence that laid the foundation for Agent Glaser’s analysis.
 

 “The relevance of computer searches performed by Agent Glaser had already been demonstrated by evidence admitted during Agent Montgomery’s testimony. For example, documents found in a car Deardorff had used, which Agent Montgomery described as receipts from car parts ordered on the internet in Turner’s name, were admitted into evidence. ... Similarly, Agent Montgomery testified that other website names were discovered based on reports from Turner’s family that they had discovered websites on Turner’s computer that were ‘odd, unusual, out of character sites visited on the dates in question when Mr. Turner was missing.’ ... Receipt for orders placed on Turner’s credit card, provided by the credit card company and the various merchants, were also admitted into evidence. ... Agent Montgomery also testified concerning the seizing of the computers and the handing off of the computers to Agent Glaser for analysis.”
 

 State’s brief at 35-36 n. 12.
 

 Therefore, the basis for Agent Glaser’s testimony regarding information Agent Glaser sought on the computers had already been admitted into evidence when Agent Glaser testified. We find no plain error.
 

 IV. Did the prosecutor’s arguments in the penalty phase amount to improper “testifying”?
 

 Deardorff asserts that the prosecutor improperly “testified” in the penalty phase of his trial. Specifically, Deardorff states:
 

 “The prosecutor presented as evidence facts, inferences, and opinions going to critical issues at the penalty phase .... The prosecutor offered testimony that the victim suffered ‘extensive pain,’ ‘great fear- in his heart,’ and ‘great torture in his mind’ and that he was kept ‘gagged and bound’ in his house and dragged to his death.”
 

 Deardorff's reply brief at 21-22.
 

 During the penalty phase of Deardorffs trial, the State offered no evidence; instead, it relied on the evidence presented during the guilt phase of the trial. See § 13A-5 — 45(c), Ala.Code 1975. However, the trial court allowed the prosecutor to “argue” the properly incorporated evidence during the evidentiary stage of the penalty phase. According to Deardorff, “[t]his ... misconduct apparently is infrequent in Alabama capital trials, as [his] research has [found] no published decisions dealing with [this] precise situation.” Deardorff would have us recognize the allowance of such argument as plain error. Under the facts of this case, we will not do so.
 

 Deardorff's trial counsel did not object to the prosecutor’s untimely argument. This failure weighs against the claim of prejudice Deardorff makes on appeal. See
 
 Brooks v. State,
 
 973 So.2d 380, 387 (Ala.Crim.App.2007). “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.”
 
 Hyde v. State,
 
 778 So.2d 199, 209 (Ala.Crim.App.1998), aff'd, 778 So.2d 237 (Ala.2000). We cannot conclude that the prosecutor’s arguments seriously affected Deardorff's substantial rights or that they had an unfair impact on the jury’s penalty-phase deliberations.
 

 
 *1245
 
 At the conclusion of the guilt phase, the trial court carefully charged the jury on the applicable law. The jury was told three times that the arguments of the attorneys were not evidence. As the trial court began its instructions to the jury during the penalty phase, it reminded the jury of the instructions given at the end of the guilt phase and offered to recharge the jury if any juror felt that it was necessary for it to do so. No juror requested any repetition of the earlier instructions. Under these circumstances, we consider it highly unlikely that any juror considered the prosecutor’s untimely arguments to be evidence. In fact, the prosecutor specifically asked the jury to consider the evidence that it had already heard in the guilt phase. At no point did the prosecutor suggest that the jury disregard the evidence or substitute his recollection of the evidence for its own.
 

 In his application for rehearing, Dear-dorff alleges that the prosecutor’s untimely argument referred to “facts that were unproven by reliable, sworn testimony.” Our review of the record indicates that that is not the case. For example, the prosecutor argued that the victim had suffered a fractured cheekbone that would have been painful. A forensic pathologist had testified that the fracture had resulted from blunt-force trauma and that it would have caused severe pain. Although Deardorff argues that there was no evidence indicating that Turner’s cheekbone was fractured before Turner was killed, he ignores evidence elicited by defense counsel on cross-examination of prosecution witness Walter Fambro that Deardorff told him that he and Peacock had taken turns beating Turner until Turner lost consciousness. In fact, during the cross-examination of the forensic pathologist, Deardorff s trial counsel raised the possibility that the blunt-force trauma had rendered Turner unconscious before the shooting.
 

 We certainly do not sanction allowing any attorney to make arguments during the evidentiary stage of the penalty phase of a capital-murder trial. However, under the facts of this case, we cannot conclude that allowing such an argument amounted to plain error. See
 
 Brooks,
 
 973 So.2d at 387.
 

 Conclusion
 

 Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
 

 APPLICATION OVERRULED; OPINION OF JANUARY 4, 2008, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 SEE, LYONS, WOODALL, SMITH, and BOLIN, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 COBB, C.J., and STUART, J., recuse themselves.